Argued and submitted August 28, 1986, affirmed February 11, reconsideration denied March 13, petition for review allowed March 31, 1987 (303 Or 172)

# STATE OF OREGON,
*Respondent,*

*v.*

# HAL LINDSEY KISSELL,
*Appellant.*

(83-1721; CA A37867)

732 P2d 940

Ernest E. Estes, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem,

argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

■    In this case, we are again presented with the issue we confronted in *State v. Neidenbach,* 73 Or App 476, 698 P2d 1040, *rev allowed* 299 Or 522, 702 P2d 1112, *rev dismissed* 300 Or 176, 707 P2d 355 (1985): whether the exclusionary rule applies to, probation revocation hearings. In *Neidenbach,* we held that it did; we now overrule that decision.

Defendant pled guilty to one count of felony driving while suspended. The court suspended imposition of sentence for two years and placed him on probation. Subsequently, defendant was stopped by a police officer after an anonymous tip that "a person" was driving a particular car containing open containers of beer. The officer did not discover open containers and was unable to check the status of defendant's driver's license due to a computer overload at the Motor Vehicles Division. He released defendant but subsequently discovered that his driver's license had been revoked. The district attorney obtained a bench warrant and an order to show cause, alleging that defendant had violated the conditions of his probation by using intoxicants and by committing the crime of felony driving while revoked. After his arraignment on the probation violation, defendant filed a motion to suppress all evidence from the stop in the probation revocation proceeding. The state concedes that the stop was illegal and that the evidence would not be admissible in a criminal trial as the fruit of an illegal stop.

The trial court recognized that our opinion in *State v. Neidenbach, supra,* which held that illegally obtained evidence is not admissible, appears to be in conflict with the Supreme Court's opinion in *State v. Nettles,* 287 Or 131, 597 P2d 1243 (1979). It chose to rely on *Nettles* and held that the evidence was admissible. It ruled that Article I, section 9, of the Oregon Constitution does not require the application of the exclusionary rule to probation revocation ·proceedings. Defendant asserts that the court's reliance on *Nettles* was misplaced, because subsequent decisions require suppression.

In *Nettles,* the Supreme Court relied on the federal analysis of the Fourth Amendment to the United States Constitution and held that illegally obtained evidence was not subject to exclusion in probation revocation hearings. The

court concluded, without separate discussion, that the same result would obtain under Article I, section 9, of the Oregon Constitution. It reasoned that the exclusionary rule is applied to deter police misconduct and that there is no additional deterrence effect in suppressing illegally obtained evidence in a probation revocation hearing, unless, at the time of the misconduct, the police were aware of the person's probationary status.

*State v. Davis,* 295 Or 227, 666 P2d 802 (1983), involved the legality of police conduct. Although the court concluded that the police had made an unlawful entry, it considered the state's argument that the evidence seized should not be suppressed in any event, because suppression would not serve to further the deterrence objective of the exclusionary rule. The court traced the history of the exclusionary rule to *Weeks v. United States,* 232 US 383, 34 S Ct 341, 58 L Ed 652 (1914), and stated that its application was originally justified, not by the goal of deterrence of police misconduct, but by the need to remedy constitutional violations. It implicitly held that

> "those rules of law designed to protect citizens against unauthorized or illegal searches or seizures of their persons, property, or private effects are to be given effect by denying the state the use of evidence secured in violation of those rules against the persons whose rights were violated, or, in effect, by restoring the parties to their position as if the state's officers had remained within the limits of their authority." *State v. Davis, supra,* 295 Or at 237.

In *State v. Neidenbach, supra,* we decided, relying on *State v. Caraher,* 293 Or 741, 653 P2d 942 (1982),[1] and *State v. Flores,* 68 Or App 617, 625, 685 P2d 999, *rev den* 298 Or 151 (1984), that *State v. Nettles, supra,* had not resolved the question of the application of the exclusionary rule to probation revocation proceedings under the Oregon Constitution, because it had been analyzed only under federal law. Citing *State v. Davis, supra,* we reasoned that, under Oregon law, evidence is excluded to undo the effects of illegal police action,

---

[1] In *State v. Caraher, supra,* the court held that, when the court gives Oregon law an interpretation corresponding to a federal opinion, its decision remains the Oregon law, even when the federal doctrine later changes.

and we concluded that that rationale necessitated the exclusion of illegally obtained evidence in a probation revocation proceeding. *State v. Neidenbach, supra,* 73 Or App at 749. We now conclude that we gave an overly generous reading to *State v. Davis, supra,* and that the Supreme Court's holding in *State v. Nettles, supra,* applies under the Oregon Constitution.

As the court in *Davis* concluded, illegally obtained evidence is excluded in a criminal trial as a means of vindicating the violation of the right to be free of unlawful searches and seizures. Accepting that rationale,[2] we conclude that it would not be proper to expand the exclusion of evidence to the probation revocation proceeding. As we have mentioned, *Davis* involved suppression in a criminal trial; there is no suggestion in the opinion that its reasoning would expand the scope of the exclusionary rule to any other context.

■ A probation revocation is not a criminal proceeding. *State v. Eckley,* 34 Or App 563, 579 P2d 291 (1978). It does not require proof of an offense and does not punish a new offense. ORS 137.550(2). The rules of evidence generally do not apply. *State v. Frye,* 2 Or App 192, 465 P2d 736 (1970). A violation of a condition of probation may be proved by a preponderance of the evidence rather than by proof beyond a reasonable doubt. *State v. Fortier,* 20 Or App 613, 533 P2d 187 (1975).

The trial court discussed the unique posture of a probation revocation proceeding:

"Persons on probation have been convicted of a crime. They are no longer presumed to be innocent of that crime and a court has determined that they need the supervision of a probation officer and they must abide by the rules that do not apply to society's other members who have not been convicted of a crime. For instance, the defendant in this case could not leave the State of Oregon without written permission of the probation officer, he was required to attend Alcoholics Anonymous meetings and complete an alcohol treatment program, he could not use intoxicants, he was required to take

---

[2] The first Oregon case to order exclusion of evidence for violation of Article I, section 9, was *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). It relied exclusively on *State v. Johnson,* 232 Or 118, 119, 374 P2d 481 (1962); *State v. Chinn,* 231 Or 259, 265, 373 P2d 392 (1962); and *Mapp v. Ohio,* 367 US 643, 81 S Ct 1684, 8 L Ed 2d 1081 (1961). *Mapp* bases suppression on a deterrence theory and not on a personal rights theory.

Antabuse, if medically approved, and he could be required to take a breath test under circumstances which would not justify requiring other citizens to take such a test. In other words, the defendant did not have an expectation that he was entitled to be treated, in relation to his probation, like other members of society. His freedom and liberty were restricted. He could be arrested for violation of his conditions of probation even though most of them are not violations of law. He could also be incarcerated for long periods of time once the violation was proven in front of a judge rather than a jury, by a preponderance of the evidence, rather than beyond a reasonable doubt. These matters demonstrate a significant distinction between a person in his probationer status and the same person in his status as a citizen charged with a new crime. In fact, this distinction is even more directly pointed out by the fact that a jury may find a person not guilty of a crime, but a judge may find that same person in violation of his probation for committing the same crime of which the jury found him not guilty."

■■ Probation is not a matter of right, but results from the court's determination, in its discretion, that a restriction less than complete deprivation of liberty is appropriate under the circumstances, considering the safety of the public and the rehabilitation of the convicted person. As the state concedes, the stop of defendant's car did not satisfy statutory or constitutional requirements; however, whether the stop was proper is not an issue here, because the revocation proceeding is not the forum for the vindication of rights. It is the means by which the court, in its continuing jurisdiction over a convicted person, determines whether the purpose of probation is being served or whether the terms of probation have been violated. *Barker v. Ireland,* 238 Or 4, 392 P2d 769 (1964).

In determining whether a defendant has violated probation, the court should have available to it any reliable information pertinent to the probationary relationship. Blanket application of the exclusionary rule would require the court to make its decision with a less than complete picture and would thereby undermine the framework of trust between the court and the defendant on which the probationary relationship depends. We conclude that those considerations weigh against the extension of the exclusionary rule beyond

the criminal trial setting.[3] *State v. Neidenbach, supra,* is overruled.

Affirmed.

---

[3] If the violation of a defendant's rights is directly connected with the probation process, *i.e.,* if the police are aware of his probationary status at the time of the illegal conduct, the result may be different. *See State v. Nettles, supra,* 287 Or at 139.