Argued and submitted November 5, 1991, the decision of the Court of Appeals and the judgment of the circuit court are reversed, case is remanded to the circuit court for further proceedings August 20, 1992

In the Matter of
Amon Maurice Rogers, a Minor Child.
## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,
*Respondent on Review,*

*v.*

Amon Maurice ROGERS,
*Petitioner on Review.*

(CC 79,651-A; CA A64589; SC S38258)

836 P2d 127

John P. Manning, Portland, argued the cause and filed the petition for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the response were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

We allowed review in this case to consider whether the exclusionary rule applies in a probation revocation proceeding. The Court of Appeals held that it does not. *State ex rel Juv. Dept. v. Rogers*, 107 Or App 370, 812 P2d 14 (1991). We disagree. Accordingly, we reverse and remand to the circuit court for further proceedings.

Petitioner is a juvenile who had been placed on probation by the juvenile court for conduct that would have been crimes if committed by an adult. ORS 419.476(1)(a). The state filed a petition alleging that petitioner had violated his probation by unlawfully possessing a pistol; violating school rules; and being expelled from school because of his participation in a disturbance outside a school dance.

At his probation revocation hearing, petitioner moved to suppress the pistol as evidence, asserting that it had been seized in violation of his rights under Article I, section 9, of the Oregon Constitution.[1] The juvenile court denied the motion on the ground that, even if the pistol had been seized unlawfully, it nevertheless would be admissible, citing *State v. Kissell*, 83 Or App 630, 732 P2d 940, *rev dismissed* 303 Or 369 (1987) (exclusionary rule applicable to criminal trials does not apply to probation revocation proceedings).[2] Petitioner then stipulated that the pistol was found in his possession. The court also received evidence relating to petitioner's other alleged probation violations. Based on petitioner's possession of the pistol and on evidence that he had committed the two other probation violations, the court revoked his probation.

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Petitioner made no argument under the United States Constitution. The parties do not argue that there is any controlling state statutory or common law, and we find none. Thus, no sub-constitutional issue is presented.

[2] *Kissell* overruled *State v. Neidenbach*, 73 Or App 476, 698 P2d 1040, *rev dismissed* 300 Or 176, 708 P2d 355 (1985), which held that the exclusionary rule applies to probation revocation hearings. In *Kissell*, the Court of Appeals relied primarily on *State v. Nettles*, 287 Or 131, 597 P2d 1243 (1979), discussed *infra*.

Although the juvenile court's decision to revoke petitioner's probation was based on all three violations, the court did not state whether its decision would have been the same without the finding that he had unlawfully possessed a pistol. Nor is it apparent to us that it would have been so. The record reveals that petitioner's possession of the pistol was the primary violation. For example, during the revocation hearing the district attorney referred to petitioner's possession of the pistol as being the violation "of real significance in this case." Because of the court's ruling admitting the evidence and the likely significance of that ruling as affecting the court's decision to revoke petitioner's probation, the correctness of that ruling is central to the disposition of this case.

In the Court of Appeals, petitioner conceded that *State v. Kissell, supra,* permitted the juvenile court to admit the pistol as evidence in his probation revocation hearing regardless of the constitutionality of its seizure. He urged, however, that *Kissell* be overruled. The Court of Appeals declined to do so. *State ex rel Juv. Dept. v. Rogers, supra.*

In *State v. Nettles,* 287 Or 131, 139, 597 P2d 1243 (1979), this court held that the exclusionary rule does not apply to probation revocation proceedings. *Nettles* reasoned that the exclusionary rule was "a judicially created remedy designed to deter future police conduct" and concluded that the deterrence function of the rule was not served by excluding unconstitutionally seized evidence in probation revocation hearings. *Id.* at 136-39.

*Nettles* decided the exclusionary rule issue under both Article I, section 9, of the Oregon Constitution, and the Fourth Amendment to the Constitution of the United States. 287 Or at 135 n 2. The analysis in *Nettles,* however, was based entirely on the federal constitution and was supported by citation only to federal cases. *Id.* at 135-39. The opinion in *Nettles* refers to the Oregon Constitution only once, in a footnote, which states: "It has been the custom of this court to give [Article I, section 9, of the Oregon Constitution] substantially the same construction as that required by the United States Supreme Court of the fourth amendment." *Id.* at 135 n 2. This court since has abandoned that "custom."

■　For more than a decade, this court has independently construed the provisions of the Oregon Constitution without being controlled by the treatment given to a parallel provision of the federal constitution by the Supreme Court of the United States. *See State v. Kennedy*, 295 Or 260, 267, 666 P2d 1316 (1983) ("when this court cites federal opinions in interpreting a provision of Oregon law, it does so because it finds the views there expressed persuasive, not because it considers itself bound to do so by its understanding of federal doctrines"); *State v. Caraher*, 293 Or 741, 748, 653 P2d 942 (1982) (this court "has independent responsibility to interpret article I, section 9"). Because of that methodology, this court has held that Oregon cases applying a federal analysis to cases that arise under Article I, section 9, such as *State v. Nettles, supra*, do not control in an independent interpretation of that provision. *State v. Tanner*, 304 Or 312, 315-16 n 2, 745 P2d 757 (1987); *see* Note, *Development of the Right to Exclude Illegally Seized Evidence in Oregon Under Article I, section 9, of the Oregon Constitution*, 25 Willamette L Rev 697, 706 n 63 (1989) (hereinafter *The Right to Exclude Illegally Seized Evidence*) (questioning continued vitality of pre-*State v. Caraher, supra*, case law as precedent for Article I, section 9, analysis). *State v. Nettles, supra*, applying a purely federal analysis, therefore, is no longer dispositive. We proceed to examine petitioner's claim under Article I, section 9.

■　Article I, section 9 "defines the limits of permissible conduct generally." *State v. Davis*, 313 Or 246, 253, 834 P2d 1008 (1992). An unreasonable search or seizure is, by definition, unlawful under that section, regardless of how the government seeks to use any unlawfully obtained evidence. *See State v. McMurphy*, 291 Or 782, 784, 635 P2d 372 (1981) ("An entry or search that violates [section 9] guarantees is unlawful regardless of whether it affects some defendant in a criminal prosecution").

Petitioner seeks to vindicate his right to be secure against unreasonable searches and seizures by prohibiting the government from using any unlawfully obtained evidence against him. As with any question concerning the breadth of the exclusionary rule, whether that rule applies in the context of a probation revocation proceeding is, fundamentally, a

question of the rationale behind that rule. This court has explained that: "The answer to the question of how broad is the exclusionary rule ought to be found in the reasons for the rule." *State Forester v. Umpqua River Nav.*, 258 Or 10, 18, 478 P2d 631 (1970), *cert den* 404 US 826 (1971); *see The Right to Exclude Illegally Seized Evidence, supra*, 25 Willamette L Rev at 705 (explaining principle).

■    This court has stated that, "unlike the Fourth Amendment exclusionary rule, which has been based on deterring police misconduct,[3] exclusions under Article I, section 9, have been based on the personal right to be free from an unlawful search and seizure." *State v. Kosta*, 304 Or 549, 553, 748 P2d 72 (1987). Thus, when the government violates an individual's Article I, section 9, rights by conducting an unreasonable search or seizure in obtaining evidence, the individual's state constitutional right to be secure against that unlawful search or seizure is protected "through the sanction of [the] suppression of evidence." *State v. Davis, supra*, 313 Or at 253. This court has consistently reaffirmed that personal rights underlie the Oregon exclusionary rule. *See State v. Davis, supra*, 313 Or at 253-54 (exclusionary rule based on personal rights theory, not deterrence); *State v. Tanner, supra*, 304 Or at 315 (same); *State v. Davis*, 295 Or 227, 231-37, 666 P2d 802 (1983) (same).

---

3 Under the Fourth Amendment, the primary reason for the exclusionary rule is deterrence of unlawful governmental conduct. *United States v. Leon*, 468 US 897, 916, 104 S Ct 3405, 82 L Ed 2d 677 (1984); *United States v. Calandra*, 414 US 338, 347-48, 94 S Ct 613, 38 L Ed 2d 561 (1974); *see State v. Davis*, 295 Or 227, 234, 666 P2d 802 (1983) ("In recent years, opinions of the United States Supreme Court have rephrased the reasons for excluding unlawfully seized evidence in terms of deterring such unlawful official conduct, over dissents that would maintain the original principle.") (citing *Stone v. Powell*, 428 US 465, 96 S Ct 3037, 49 L Ed 2d 1067 (1976); *United States v. Peltier*, 422 US 531, 552 n 11, 95 S Ct 2313, 45 L Ed 2d 374 (1975); and *United States v. Calandra, supra*). That reason has shaped the breadth and application of the federal exclusionary rule. *See, e.g., United States v. Janis*, 428 US 433, 96 S Ct 3021, 49 L Ed 2d 1046 (1976) (deterrence function is not served by excluding illegally seized evidence in federal civil proceedings); *United States v. Calandra, supra*, 414 US at 354-55 (deterrence function is not sufficiently served by excluding illegally seized evidence in a federal grand jury proceeding).

In *Terry v. Ohio*, 392 US 1, 12-13, 88 S Ct 1868, 20 L Ed 2d 889 (1968), the Supreme Court noted that the exclusionary rule also serves another vital function, *i.e.*, "the imperative of judicial integrity," quoting *Elkins v. United States*, 364 US 206, 222, 80 S Ct 1437, 4 L Ed 2d 1669 (1960). *But see United States v. Janis, supra*, 428 US at 458 n 35 ("Judicial integrity clearly does not mean that the courts must never admit evidence obtained in violation of the Fourth Amendment").

In the past, this court has protected the individual's constitutional right to be secure against unlawful search or seizure through the sanction of suppression of evidence in criminal prosecutions. *See State v. Davis, supra,* 313 Or at 253 ("If [the] constitutional right to be 'secure' against impermissible government conduct is to be effective, it must mean that the government cannot obtain a criminal conviction through the use of evidence obtained in violation of a defendant's rights * * *"). Criminal prosecutions are not necessarily the only proceedings in which the sanction of suppression of evidence is required to vindicate an individual's Article I, section 9 rights, however. The present situation is closely analogous to those situations in which this court has applied the remedy of suppression in the past.

■ In this case, petitioner was at liberty, albeit with some restrictions. The term of his original probation was for two years; that term would have expired in October 1991. Since the juvenile court revoked his probation, he has been in the custody of the state. In short, he has lost his liberty. All of this may have been the result of the state's use of unconstitutionally seized evidence. We conclude that if, in fact, the pistol was unlawfully seized in violation of petitioner's Article I, section 9, rights, petitioner's liberty interest is sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions that the reasons for the sanction of suppression of evidence are equally applicable, requiring that the pistol be suppressed in order to vindicate petitioner's right to be secure against an unreasonable search or seizure. We hold that the exclusionary rule applies in a probation revocation proceeding for a violation of Article I, section 9. *Cf. State v. Donovan,* 305 Or 332, 335, 751 P2d 1109 (1988) (a probation revocation proceeding invokes the criminal sanctions pending against the defendant).[4] *If* the state seized the pistol in violation of petitioner's Article I, section 9, rights, then, on timely objection, that evidence should have been suppressed.

The juvenile court erred in ruling that, even if the pistol was seized in violation of Article I, section 9, the pistol need not be suppressed. However, because the court made no findings about the circumstances in which the pistol was

---

[4] We need not decide in this case whether the sanction of suppression for violation of Article I, section 9, may be required in other contexts.

seized, we cannot determine whether Article I, section 9, was violated and whether the evidence therefore should have been suppressed. Moreover, the court did not indicate whether it would have revoked petitioner's probation based only on the two other violations unrelated to the possession of the pistol.[5] For those reasons we remand this case to the juvenile court to consider petitioner's claim that the pistol was seized in violation of his Article I, section 9, rights and, if the court finds that the seizure violated those rights, to decide whether one or both of the other proven violations would justify revocation of his probation.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. This case is remanded to the circuit court for further proceedings.

---

[5] Petitioner did not challenge the juvenile court's findings on the two other violations. During oral argument in this court, petitioner's counsel conceded that the court could have revoked petitioner's probation on the basis of one or both of those violations. Counsel argued, however, that but for petitioner's unlawful possession of the pistol, the court would not have done so.