Argued and submitted November 15, 2004, affirmed March 30, 2005

## T.M.M.,
by and through D.L.M.,
guardian *ad litem*,
*Appellant,*

*v.*

## LAKE OSWEGO SCHOOL DISTRICT
and Lake Oswego District School Board,
*Respondents.*

CCV0304523; A122322

108 P3d 1211

Richard E. Oberdorfer argued the cause for appellant. With him on the brief was Oberdorfer Law Firm LLC.

Jennifer L. Hungerford argued the cause for respondents. With her on the brief were Nancy J. Hungerford and The Hungerford Law Firm.

Before Haselton, Presiding Judge, and Linder and Ortega, Judges.

HASELTON, P. J.

### HASELTON, P. J.

Plaintiff appeals from the trial court's dismissal of his petition for a writ of review, ORS 34.100, in which he challenged his expulsion from high school by defendants (the district) and requested expungement of that expulsion from his scholastic record. Plaintiff assigns error to the trial court's determination that certain statements that he made to school officials were properly admitted and relied upon in the expulsion hearing. In particular, the trial court concluded that, in eliciting those statements, school officials did not violate plaintiff's constitutional rights, and that, in all events, the exclusionary rule did not apply to the expulsion proceedings. We agree with the district that those statements were not subject to suppression under the exclusionary rule. Accordingly, we affirm.

The material facts are largely undisputed. On December 18, 2002, plaintiff was a freshman at Lakeridge High School (Lakeridge) in Lake Oswego. That afternoon, plaintiff's mother received a phone call from Lakeridge vice-principal Hays that plaintiff was in her office and that there was "a situation." Plaintiff's mother, who was waiting to pick plaintiff up from school, entered Hays's office and told her that she was "very uncomfortable with [Hays] talking to [plaintiff] without [his] attorney present." Apparently, plaintiff had previously been suspended from school that year and had been subject to adjudication in the juvenile court for the conduct that resulted in that suspension.

The following month, plaintiff was again in trouble at school. On January 16, 2003, a teacher smelled marijuana smoke coming from a restroom while plaintiff and another student were in the restroom. Plaintiff was then taken to Hays's office where, for a period of approximately two hours, Hays and other school officials questioned plaintiff about his suspected marijuana use. During the questioning, the school officials did not ask plaintiff, who has diabetes, if he needed to use the bathroom or check his blood sugar level, nor did they ask him if he wished to have his parents or an attorney present. Although plaintiff initially denied marijuana use, he ultimately admitted to Hays and others that he had been

smoking marijuana in the restroom. The school officials later reported that information to the Lake Oswego Police Department pursuant to district policy.[1]

An expulsion hearing was held on January 29, 2003. Plaintiff argued, *inter alia*, that Hays and the other school officials should not have questioned him without an attorney present because his mother's statements to Hays on December 18 constituted a blanket invocation of counsel on plaintiff's behalf. Based on Hays's description of the incident, including her account of plaintiff's admissions,[2] the hearings officer concurred with the high school administration's recommendation that plaintiff be expelled from Lakeridge for the second semester of the 2002-03 school year.[3] With respect to plaintiff's "right to counsel" contention, the hearings officer adopted the view expressed by the district's counsel that the legal authority plaintiff had invoked pertained only to criminal matters.

Plaintiff then appealed the hearings officer's order to the Lake Oswego School Board. Plaintiff argued, in part, that his inculpatory statements to Hays and the others were not competent evidence because he had not been given *Miranda* warnings, because he had not been given the opportunity to consult with counsel, and because his statements were involuntary. The school board rejected those arguments and, based in part on plaintiff's inculpatory statements, affirmed the expulsion.

In April 2003, plaintiff filed his petition for a writ of review, challenging the school board's decision. Plaintiff

---

[1] The district's policy states:

"In cases of possession, use, or selling alcohol or drugs, violators shall be referred to legal authorities or to the appropriate law enforcement agency unless there is a compelling reason not to refer."

At the time that plaintiff filed his petition for a writ of review, a separate juvenile court adjudication was still pending. That case is not at issue in this appeal.

[2] On counsel's advice, plaintiff did not speak at the hearing.

[3] The expulsion notice stated that the period of expulsion could be shortened to one quarter if plaintiff completed a substance-abuse assessment and adhered to any recommendations resulting from such an assessment and that, in all events, plaintiff could re-enroll at Lakeridge at the beginning of the 2003-04 school year. The notice also identified alternative educational options that plaintiff could pursue, with district financial assistance, during the period of expulsion.

argued to the trial court, as he had to the school board, that the district had violated his right to counsel under the Oregon and United States constitutions, that his statements to Hays and other school officials had not been voluntary, and that, because of those violations, those admissions should not have been considered in the expulsion hearing. The trial court granted the district's motion to dismiss the writ, concluding that,

"under the circumstances, Plaintiff's constitutional rights to counsel and advice of *Miranda* rights were not violated because law enforcement officers were not involved in the interrogation and the matter before the Court was not a criminal prosecution. The Court finds there is insufficient evidence in the record that the statements were not voluntary, and the exclusionary rule does not apply to school expulsion proceedings."

On appeal, plaintiff raises two arguments. First, plaintiff contends that, when he was questioned by school officials, he was subjected to custodial interrogation and, as a result, he had a constitutionally protected right to counsel under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. Plaintiff also suggests that he had a related right to counsel under Article I, section 11, of the Oregon Constitution.[4] Second, plaintiff argues that the trial court erred in determining that there was "insufficient evidence in the record that [his] statements were not voluntary."

With respect to his first argument pertaining to the right to counsel, plaintiff suggests that, because the district's policy provides for school officials to refer information about possession or use of illegal substances to law enforcement officials, "[t]he school officials by their policy and practice have rendered themselves police and state agents." Proceeding from that premise, plaintiff asserts that school officials

---

[4] Article I, section 11, provides that, "[i]n all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel." Article I, section 12, provides that "[n]o person shall be * * * compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides that "[n]o person shall be * * * compelled in any criminal case to be a witness against himself."

We do not understand plaintiff to raise a separate argument under the Sixth Amendment.

violated his rights (1) by not giving *Miranda* warnings and (2) by failing to acknowledge and respect his mother's invocation of his rights the previous month. Further, plaintiff posits, the proper remedy for those alleged violations was suppression of his statements at the expulsion hearing. As support for the proposition that suppression is proper in the administrative expulsion context, plaintiff relies on several Oregon cases dealing with driver's license suspension hearings by the Driver and Motor Vehicle Services Division of the Department of Transportation (DMV). *See, e.g., Pooler v. MVD*, 306 Or 47, 755 P2d 701 (1988); *Moore v. Motor Vehicles Division*, 293 Or 715, 652 P2d 794 (1982).

With respect to his second, "voluntariness" challenge, plaintiff contends that he did not expressly waive his right against self-incrimination. Consequently, plaintiff reasons, "the voluntariness question" must be resolved by reviewing "the totality of the circumstances of the interrogation." Plaintiff asserts that, when so viewed, his statements should have been suppressed, because he

> "was never told he could leave [the office], was never told he could communicate with the outside world, was never told he had a right to remain silent in the face of criminal accusations, was interviewed by a rotating cast of administrators for a matter of hours, * * * witnessed those administrators blithely ignore his mother's request to have an attorney present during questioning, and was never allowed to check his blood sugar or use the restroom."

The district responds that plaintiff had no constitutionally protected right to counsel while school officials questioned him. That is so, the district asserts, because, in questioning plaintiff, Hays and other school officials were not law enforcement agents engaged in a criminal investigation; rather, they were merely investigating plaintiff's apparent violation of the district's policy against possession or use of illegal substances.[5] Further, the district asserts that, even if there had been some violation of plaintiff's constitutionally protected rights, the exclusionary rule would not apply to the expulsion proceedings because the exclusionary rule "applies

---

[5] The parties do not dispute that, generally, possession or use of marijuana on school grounds would violate district policy and warrant expulsion from school.

only to police conduct and does not apply to proceedings outside the criminal context." Finally, the district contends that the record of the expulsion proceedings amply substantiates that plaintiff's admissions were, in fact, voluntary.

We begin with the district's argument that the exclusionary rule does not apply in a school expulsion hearing because, ultimately, that argument is dispositive here. As explained below, we conclude that, even assuming, without deciding, that school officials violated plaintiff's constitutional rights when they questioned him without a lawyer being present or, at least, without advising him of rights against self-incrimination and entitlement to counsel, suppression is not available as a remedy in this context for any such violation. Plaintiff cites no reported decision in Oregon, or elsewhere, in which a court has suppressed evidence in a school disciplinary proceeding on such grounds, and we are unaware of such authority. Indeed, Oregon law dictates a contrary result.

*State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 836 P2d 127 (1992), frames the inquiry. There, the court considered whether the exclusionary rule applied to juvenile probation revocation proceedings. Specifically, the juvenile court had denied a motion to suppress a pistol, which had been seized in violation of Article I, section 9, of the Oregon Constitution, and then had relied on that evidence in revoking the juvenile's probation. 314 Or at 116. The Supreme Court reversed and remanded, holding that, given the purposes of the exclusionary rule under Oregon constitutional law and the nature of the interests implicated by probation revocation, the exclusionary rule did apply:

> "Petitioner seeks to vindicate his right to be secure against unreasonable searches and seizures by prohibiting the government from using any unlawfully obtained evidence against him. As with any question concerning the breadth of the exclusionary rule, whether that rule applies in the context of a probation revocation proceeding is, fundamentally, a question of the rationale behind that rule. This court has explained that: 'The answer to the question of how broad is the exclusionary rule ought to be found in the reasons for the rule.' *State Forester v. Umpqua River*

*Nav.*, 258 Or 10, 18, 478 P2d 631 (1970), *cert den* 404 US 826 (1971) * * *.

"This court has stated that, 'unlike the Fourth Amendment exclusionary rule, which has been based on deterring police misconduct, exclusions under Article I, section 9, have been based on the personal right to be free from an unlawful search and seizure.' *State v. Kosta*, 304 Or 549, 553, 748 P2d 72 (1987). Thus, when the government violates an individual's Article I, section 9, rights by conducting an unreasonable search or seizure in obtaining evidence, the individual's state constitutional right to be secure against that unlawful search or seizure is protected 'through the sanction of [the] suppression of evidence,' *State v. Davis*, [313 Or 246, 253, 834 P2d 1008 (1992)]. This court has consistently reaffirmed that personal rights underlie the Oregon exclusionary rule. * * *

"In the past, this court has protected the individual's constitutional right to be secure against unlawful search or seizure through the sanction of suppression of evidence in criminal prosecutions. *See State v. Davis, supra*, 313 Or at 253. ('If [the] constitutional right to be 'secure' against impermissible government conduct is to be effective, it must mean that the government cannot obtain a criminal conviction through the use of evidence obtained in violation of a defendant's rights * * *'). Criminal prosecutions are not necessarily the only proceedings in which the sanction of suppression of evidence is required to vindicate an individual's Article I, section 9[,] rights, however. The present situation is closely analogous to those situations in which this court has applied the remedy of suppression in the past.

"In this case, petitioner was at liberty, albeit with some restrictions. The term of his original probation was for two years; that term would have expired in October 1991. Since the juvenile court revoked his probation, he has been in the custody of the state. In short, he has lost his liberty. All of this may have been the result of the state's use of unconstitutionally seized evidence. We conclude that if, in fact, the pistol was unlawfully seized in violation of petitioner's Article I, section 9, rights, petitioner's liberty interest is sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions that the reasons for the sanction of suppression of evidence are equally applicable, requiring that the pistol be suppressed in order to vindicate petitioner's right to be secure against an unreasonable

search or seizure. We hold that the exclusionary rule applies in a probation revocation proceeding for a violation of Article I, section 9."

314 Or at 118-20 (citations and footnotes omitted). *See also State v. Swartzendruber*, 120 Or App 552, 556-57, 853 P2d 842 (1993) (applying exclusionary rule for evidence seized in violation of Article I, section 9, to sentencing hearing; concluding, under *Rogers*'s analysis, that liberty interests affected by sentencing were sufficiently similar to those at stake in criminal trials and probation revocation proceedings to warrant extension of exclusionary rule).[6]

Here, any deprivation of plaintiff's liberty resulting from the school expulsion proceeding is hardly qualitatively "analogous to the liberty interests at stake in traditional prosecutions." *Rogers*, 314 Or at 120. Obviously, plaintiff was not subject to incarceration or to conditions whose violation could result in incarceration. Rather, he was precluded from attending a public high school for a maximum period of roughly five months, with the ability to reduce that period of expulsion by half if he complied with conditions reasonably related to his violation of school rules. *See* 198 Or App at 575 n 3. Moreover, notwithstanding the expulsion, the district provided financial support for the continuation of plaintiff's education elsewhere. *Id*. Given the qualitative differences between the liberty interests at stake in criminal prosecutions and those implicated in school expulsion proceedings, we conclude that, even assuming that plaintiff's admissions were obtained in violation of Article I, sections 11 and 12, the exclusionary rule does not apply in this context.

*Moore* and *Pooler*, which plaintiff invokes, are not to the contrary. Neither of those cases, nor any other Oregon case, extends the exclusionary rule to administrative or quasi-judicial proceedings. In *Moore*, the issue before the Supreme Court was one of statutory construction, and not of suppression. In particular, the court addressed whether, or in what circumstances, a driver's insistence on speaking with a

---

[6] *Cf. State Forester v. Umpqua River Nav.*, 258 Or 10, 14-26, 478 P2d 631 (1970), *cert den*, 404 US 826 (1971) (exclusionary rule for violation of the Fourth Amendment did not apply to civil actions in which state, as plaintiff, sought to recover fire suppression costs).

lawyer or some other person before submitting to a breath test constituted an actionable "refusal" to submit to a test within the meaning of the Implied Consent Act's provisions governing suspension of driving privileges. *See Moore*, 293 Or at 720-23 (construing statutory antecedents of present ORS 813.410(5)(c) and ORS 813.100(2), (3)).

Similarly, in *Pooler*, which also involved the suspension of driving privileges, the Supreme Court addressed whether the petitioner had been "arrested" within the meaning of the statutory antecedents of the present ORS 813.100(1) and ORS 813.410(5)(a), (b). The court held that "arrest," as used in those provisions, meant a "legally valid" arrest. *Pooler*, 306 Or at 50-51. Accordingly, where the predicate arrest was not, in fact, lawful because the underlying stop was unlawful, that statutory prerequisite for suspension based on a driver's refusal to submit to a breath test was not satisfied. Thus, in *Pooler*, the court did not "suppress" the plaintiff's refusal to take the breath test based on the unlawfulness of the initial stop; rather, the court concluded that the statutory requirements for suspension of driving privileges had not been satisfied. *Id.*

We turn to whether, because of the alleged violation of plaintiff's rights under the Fifth Amendment, his statements should have been suppressed in the expulsion proceeding. Again, even assuming, without deciding, that such a violation occurred, we conclude that the exclusionary rule does not apply in this context.

*INS v. Lopez-Mendoza*, 468 US 1032, 104 S Ct 3479, 82 L Ed 2d 778 (1984), prescribes the analysis. There, the Court considered whether the exclusionary rule for evidence seized in violation of the Fourth Amendment should be applied in deportation proceedings. In resolving that question, the Court noted that, in *United States v. Janis*, 428 US 433, 454, 96 S Ct 3021, 49 L Ed 2d 1046 (1976), it had held that the rule did not apply in federal tax proceedings to bar the use of evidence that had been illegally seized by state officials. The court in *Lopez-Mendoza* summarized and refined the "framework" that it had employed in *Janis* as follows:

> "Imprecise as the exercise may be, the Court recognized in *Janis* that there is no choice but to weigh the likely social

benefits of excluding unlawfully seized evidence against the likely costs. On the benefits side of the balance, 'the primary purpose of the [exclusionary] rule, if not the sole one, is to deter future unlawful police conduct.' On the cost side, there is the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs."

468 US at 1041 (quoting *United States v. Calandra*, 414 US 338, 347, 94 S Ct 613, 38 L Ed 2d 561 (1974)).

As the Court acknowledged in *Lopez-Mendoza*, the balancing inquiry is "imprecise." Nevertheless, we conclude that the social costs of imposing the exclusionary rule in this context outweigh the benefits of exclusion, particularly deterrence of Fifth Amendment violations. In so holding, we do not discount the deterrent effect of suppressing inculpatory statements obtained in violation of the Fifth Amendment, in school expulsion proceedings. Where (as plaintiff asserts occurred here), school officials, acting as law enforcement agents, conduct "custodial interrogations" in investigating conduct that is both criminal and a violation of school rules, the application of the exclusionary rule in school disciplinary proceedings should deter violations of the Fifth Amendment. *See Thompson v. Carthage School Dist.*, 87 F3d 979, 981 (8th Cir 1996) (noting deterrence benefits of applying exclusionary rule where "school officers both conducted the search and imposed the student discipline").

Still, we conclude, as have other courts, that the costs of exclusion in this context are "too dear." *Gordon J v. Santa Ana Unified School Dist.*, 162 Cal App 3d 530, 544, 208 Cal Rptr 657 (Cal App 4th Dist 1984). *Thompson* is exemplary. There, the plaintiff was expelled from high school after school officials, following a search that violated the Fourth Amendment, discovered crack cocaine in his coat pocket. The plaintiff filed an action under 42 USC section 1983, seeking damages for "wrongful expulsion." *Thompson*, 87 F3d at 980. The district court entered a judgment for the plaintiff, and the Eighth Circuit reversed. In reversing, the court of appeals addressed whether the school district should have applied the exclusionary rule to the expulsion proceedings:

"The societal costs of applying the rule in school disciplinary proceedings are very high. For example, the exclusionary rule might bar a high school from expelling a student who confessed to killing a classmate on campus if his confession was not preceded by *Miranda* warnings. We doubt that any parent would compromise school safety in this fashion. To the extent the exclusionary rule prevents the disciplining of students who disrupt education or endanger other students, it frustrates the critical governmental function of educating and protecting children.

"Moreover, 'maintaining security and order in schools requires a certain degree of flexibility in school disciplinary procedures.' *New Jersey v. T.L.O.*, 469 US 325, 340, 105 S Ct 733, 83 L Ed 2d 720 (1985). Application of the exclusionary rule would require suppression hearing-like inquiries inconsistent with the demands of school discipline * * *.

"* * * * *

"Indeed, we see some risk that application of the rule would deter educators from undertaking disciplinary proceedings that are needed to keep the school safe and to control student misbehavior. In any event, any deterrence benefit would not begin to outweigh the high societal costs of imposing the rule."

*Id.* at 981-82.

In *Gordon J*, the California Court of Appeals, Fourth Appellate District, reached the same conclusion. There, the plaintiff, a high school student, was suspended for one year after a vice-principal unlawfully searched the plaintiff and found marijuana. The plaintiff challenged his suspension, contending that the exclusionary rule should have been applied in the disciplinary proceedings. The court, after "balancing the competing interests involved," 161 Cal App 3d at 544, disagreed: "The social costs in terms of harm to other students, to say nothing of the damage to the morale of parents and teachers, is too dear." *Accord James v. United School District No. 512*, 899 F Supp 530, 533 (D Kan 1995) (denying injunctive relief against expulsion based on the plaintiff's possession of a firearm at high school: "Assuming the plaintiff's Fourth and Fifth Amendment rights were violated, case law does not prohibit using the fruits of that violation in school disciplinary hearings.").

We concur in the Eighth Circuit's assessment of the social costs of extending the exclusionary rule to school disciplinary proceedings. We also agree that those costs outweigh the benefits of deterrence.[7] Accordingly, we reject plaintiff's Fifth Amendment-based argument.

We reject plaintiff's remaining arguments, including plaintiff's arguments regarding the alleged involuntariness of his admissions, without discussion.[8]

Affirmed.

---

[7] We note that here there is no evidence that, as a matter of policy, school officials routinely engaged in practices violating students' constitutional rights. *Accord Jones v. Letexo Independent School Dist.*, 499 F Supp 223 (ED Tex 1980) (overturning suspensions based on drug possession where administrators subjected entire student body to search by drug-sniffing dog).

[8] Consistently with our rejection of plaintiff's arguments that his admissions were involuntary, we emphasize that this is not a case in which the conduct of school officials in obtaining a student's inculpatory admissions was so coercive as to render those admissions innately untrustworthy.