202 P.3d 167 (2009)
345 Or. 657
In the Matter of W.L.P, a Minor Child.
STATE ex rel. DEPARTMENT OF HUMAN SERVICES, Respondent on Review,
v.
W.P., Petitioner on Review.
(CC 07201J; CA A136056; SC S055687).
Supreme Court of Oregon, En Banc.
Argued and Submitted September 18, 2008.
Decided February 5, 2009.
*168 James A. Palmer, Eugene, argued the cause and filed the brief for petitioner on review.
Anna M. Joyce, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.
BALMER, J.
We allowed review in this case to consider whether the exclusionary rule, under which illegally obtained evidence is excluded from certain court proceedings, applies to a parent's motion to suppress evidence in a juvenile dependency proceeding involving the parent's child. The juvenile court determined that it does not and therefore denied a motion to suppress filed by child's father. The court then found child to be within the jurisdiction of the juvenile court and placed child in the custody of the Department of Human Services (DHS). Father appealed, arguing that the court had erred in denying his motion to suppress. The Court of Appeals affirmed without opinion. State ex rel Dept. of Human Services v. W. P., 216 Or. App. 555, 173 P.3d 841 (2007). We allowed father's petition for review and now affirm.
In March 2007, in connection with a drug investigation involving mother, police executed a search warrant of the home of mother, father, and child. During that search, officers found drugs in the home and on father's person. Both parents were arrested, and the police contacted DHS concerning child. Due to both parents' arrests and the fact that drugs were found within child's reach, DHS placed child in foster care and filed a juvenile dependency petition, requesting that the court take jurisdiction over child. ORS 419B.100.[1] Pursuant to that petition, the juvenile court conducted a jurisdictional and dispositional hearing on May 22, 2007. See ORS 419B.305(1) (requiring hearing within 60 days of filing of petition). At the hearing, father moved to suppress evidence found in the search, claiming that the search warrant was not supported by probable cause. The juvenile court denied the motion because it concluded that the exclusionary rule does not apply in juvenile dependency proceedings. Because of that ruling, the court did not reach the issue whether the search warrant was valid.
*169 After the juvenile court denied father's motion to suppress, father consented to proceed on stipulated facts, and the juvenile court found child to be within the jurisdiction of the court.[2] The court then proceeded to make a dispositional determination. See ORS 419B.325 (after hearing required by ORS 419B.305, court must enter order directing disposition of case). The court made child a ward of the state, placed child in the legal custody of DHS, determined that it was in child's best interest to be placed in foster care, and ordered father to participate in various services, including drug treatment and psychological evaluation.[3]
Father appealed the juvenile court's judgment of jurisdiction, arguing that the juvenile court had erred in refusing to apply the exclusionary rule to juvenile dependency cases. As noted, the Court of Appeals affirmed without opinion, and father petitioned this court for review. We allowed review to consider father's claim that, under Article I, section 9, of the Oregon Constitution[4] or the Fourth Amendment to the United States Constitution,[5] the juvenile court should have granted his motion to suppress evidence seized in the search.
We begin by describing the statutory basis for juvenile dependency proceedings, because those statutes establish specific rights and duties of father, child, and the state that are central to our consideration of father's constitutional claims. ORS 419B.090 creates the juvenile court and articulates the state policies that proceedings in that court are intended to advance. The state's policy "recognize[s] that children are individuals who have legal rights" and that those rights include "[p]ermanency with a safe family[,]" "[f]reedom from physical, sexual or emotional abuse or exploitation[,]" and "[f]reedom from substantial neglect of basic needs." ORS 419B.090(2)(a). The statute further states that parents "have a duty to afford their children [those] rights" and to remove "any impediment to [the parents'] ability to perform parental duties that afford [those] rights to their children." ORS 419B.090(2)(b). Moreover, if a parent "fails to fulfill [those] duties, the juvenile court may determine that it is in the best interests of the child to remove the child from the parent * * * either temporarily or permanently." Id. In juvenile dependency proceedings, the court is to "guard the liberty interest of parents protected by the Fourteenth Amendment to the United States Constitution," including the right "to direct the upbringing of their children," while also "protect[ing] the rights and interests of children[.]" ORS 419B.090(4).
In furtherance of those state goals, the juvenile court "has exclusive original jurisdiction" in any case involving a child "[w]hose condition or circumstances are such as to endanger the welfare of the [child] * * *." ORS 419B.100(1)(c). If DHS determines that a child's condition or circumstances endanger the welfare of the child, DHS files a petition asking the juvenile court to take jurisdiction over the child, and the *170 court holds a jurisdictional hearing. ORS 419B.305-419B.310. If the court determines the child to be within its jurisdiction, the court makes the child a ward of the court. ORS 419B.328. The court then determines whether it would be "in the best interest and welfare" of the child to be placed under protective supervision, and, if it so determines, the court may place the child with the parent (subject to court and DHS supervision) or in some other setting, such as with a relative or in foster care. ORS 419B.331 (describing protective supervision). As noted, if the juvenile court determines that the child is within the jurisdiction of the court, the court must conduct hearings at least every 12 months to review the appropriate placement of the child. ORS 419B.470(6). Juvenile courts administering those statutes "act in parens patriae, focusing on family unity and the best interests of the child." State ex rel. Juv. Dept. v. Geist, 310 Or. 176, 189, 796 P.2d 1193 (1990) (footnote omitted).
With that background, we turn to father's argument that the evidence that he possessed drugs should have been excluded from the juvenile court jurisdictional hearing. We begin with father's state constitutional claims. See Sterling v. Cupp, 290 Or. 611, 614, 625 P.2d 123 (1981) (court analyzes state claims before federal claims). As noted, the juvenile court did not decide whether the evidence was obtained in violation of father's constitutional rights, because it concluded that, even if the evidence had been unlawfully obtained, it should not be excluded. For purposes of this opinion, therefore, we assume that the evidence was unlawfully obtained. Oregon courts have consistently held that evidence obtained from a person in violation of Article I, section 9, may not be used against that person in a criminal proceeding. See, e.g., State v. Davis, 295 Or. 227, 666 P.2d 802 (1983) (so holding). Indeed, the exclusionary rule is often described as "the rule excluding [evidence] from criminal prosecutions," id. at 231, 666 P.2d 802 (emphasis added), and as protecting the "right not to be prosecuted upon evidence [illegally] secured." Id. at 235, 666 P.2d 802 (emphasis added). The issue in this case is whether the rule that this court has applied to motions to suppress by defendants in criminal cases also should be applied to a motion to suppress by a parent in a juvenile dependency proceeding.[6]
This court explained the analytical approach for resolving that issue in State ex rel Juv. Dept. v. Rogers, 314 Or. 114, 839 P.2d 127 (1992). In Rogers, the issue was whether the exclusionary rule should be applied in a probation revocation hearing in a juvenile delinquency case. The juvenile's probation had been revoked, in part, because he had unlawfully possessed a gun, and he moved to suppress the gun, arguing that it had been seized in violation of Article I, section 9. Id. at 116, 836 P.2d 127. This court began by noting that, in earlier decisions, the court had protected the individual's right to be secure against unlawful search or seizure "through the sanction of suppression of evidence in criminal prosecutions." Id. at 120, 836 P.2d 127 (emphasis added). It recognized, however, that criminal prosecutions are "not necessarily the only proceedings in which the sanction of suppression of evidence is required to vindicate an individual's Article I, section 9 rights[.]" Id. Rather, if the individual's "liberty interest is sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions that the reasons for the sanction of suppression of evidence are equally applicable," then the evidence should be suppressed. Id. In Rogers, the juvenile was "at liberty" before he was found to have violated his probation; after the probation revocation, he was "in the custody of the state" and had "lost his liberty" for reasons that were comparable to those in a criminal proceeding. Id. For those reasons, this court concluded that the juvenile's liberty interest in the probation revocation proceeding was "sufficiently analogous" to a defendant's liberty interest that is at stake in a traditional criminal prosecution and that the physical evidence at issue therefore should have been suppressed. Id.
*171 We turn to a consideration of the nature of father's liberty interest in this juvenile dependency proceeding. Obviously, this is not a criminal proceeding. See Geist, 310 Or. at 188, 796 P.2d 1193 (holding that proceeding to terminate parental rights, which is one possible outcome of a juvenile dependency proceeding, is not a criminal prosecution). Neither is it like the probation revocation proceeding in Rogers, because father does not face incarceration or similar criminal law sanctions as a result of this proceeding. The proceeding does not involve any effort by the state to punish the parent for wrongdoing. Rather, in a juvenile dependency proceeding, the welfare of the child is the court's primary consideration, and the state's purpose in initiating such a proceeding is to intervene as necessary to protect the child. See ORS 419B.100(1)(c) (child found to be within jurisdiction of court if child's condition or circumstances "endanger the welfare" of child); ORS 419B.331 (permitting court to place child under protective supervision "[w]hen the court determines it would be in the best interest and welfare of a ward"); ORS 419B.476 (requiring that court "consider the ward's health and safety the paramount concerns" at permanency hearing). Because this case does not implicate father's liberty interest in remaining free from state custody, Rogers does not require the court to exclude the evidence based on father's motion, even if the evidence was unlawfully seized.
Father argues that the juvenile dependency proceeding interferes with his liberty interest in controlling the care and custody of his child. See O'Donnell-Lamont and Lamont, 337 Or. 86, 100, 91 P.3d 721 (2004) (recognizing parents' interest, protected by the Due Process Clause, in making decisions concerning their children); ORS 419B.090(4) (parent has "liberty interest" in "direct[ing] the upbringing" of a child). This is a juvenile dependency proceeding in which the juvenile court determined that child was within the jurisdiction of the court. The court temporarily removed child from father's home, but, as discussed above, child can be returned to father's home if father complies with the juvenile court's orders and participates in the services provided by DHS so as to make it possible for child to safely return home. See ORS 419B.470; ORS 419B.476 (describing procedures and standards for juvenile court decisions regarding status of child that is within the jurisdiction of the court).
Although any restriction by the state on father's control over the upbringing of child interferes with father's liberty interest, the restriction at issue herean order determining that child is within the jurisdiction of the juvenile courtis temporary and conditional. In a criminal prosecution, the defendant himself or herself is subject to a final adjudication that may result in incarceration and immediate loss of physical liberty, possible criminal fines, and temporary or permanent restrictions on travel, association, and behavior. The nature of the defendant's liberty interest at stake in a criminal prosecution is such that, as this court stated in Davis, the court will "deny[ ] the state the use of [illegally seized] evidence * * * against the persons whose rights were violated[.]" 295 Or. at 237, 666 P.2d 802. But the interest at stake in this juvenile dependency proceeding is qualitatively different. The proceeding did not result in a final determination depriving father of a constitutionally protected liberty interest, such as could result from other criminal or civil proceedings.
Moreover, we do not consider a parent's interest in controlling a child's upbringing in a vacuum. As the statutes discussed above demonstrate, a child also has specific legal rights and interests, and the state initiates juvenile dependency proceedings to protect those rights. In exercising jurisdiction over a child, the juvenile court must "protect the rights and interests" of the child, as well as the parent's interest. ORS 419B.090(4). In contrast to a criminal proceeding, where the principal interests at stake are those of the defendant and the state, the critical interest in a juvenile dependency proceeding is that of a different person, the child. See ORS 419B.100(1)(c) (juvenile court has exclusive jurisdiction when child's "condition or circumstances are such as to endanger the welfare" of child). If the child is found to be within the jurisdiction of the court, then court decisions as to supervision and custody *172 are made based on "the best interest and welfare" of the child. ORS 419B.331. In our view, given those distinctive aspects of a juvenile dependency proceeding, father's interest here is not sufficiently analogous to the interests involved in our earlier decisions to require the exclusion of unlawfully seized evidence on father's motion.
Although father acknowledges that this court has applied the exclusionary rule only in criminal cases and in the analogous setting of a juvenile delinquency probation revocation hearing, he argues that this court's statements about the rule in earlier cases support his position. In particular, he points to Davis, where this court stated that it has given effect to the prohibition on unlawful searches "by restoring the parties to their position as if the state's officers had remained within the limits of their authority." 295 Or. at 237, 666 P.2d 802. Father argues that Davis demonstrates that the exclusionary rule prevents the state from using any evidence secured in violation of a person's rights against that person, whether in a criminal or civil proceeding. He asserts that the only way in which a court can "restor[e] the parties to their position as if the state's officers had remained within the limits of their authority" is to exclude the wrongfully obtained evidence from this juvenile dependency proceeding.
Father's reliance on Davis is misplaced. First, Davis did not purport to state a rule that would apply in every case. Rather, Davis simply reviewed this court's earlier cases (and some federal cases) discussing when the exclusionary rule had and had not been applied, id. at 233-37, 666 P.2d 802, and then attempted to summarize those holdings in the sentence that father cited. However, every Oregon case that the court cited involved the application of the exclusionary rule in a criminal proceeding, and Davis itself was a criminal case. Thus, the holding in Davis provides little guidance with respect to the application of the exclusionary rule to other proceedings.
Second, a closer examination of the statement upon which father relies shows that it does not support his position here. The court stated in Davis that protections against illegal searches should be "given effect" by "restoring the parties to their position" as if the illegal search had not occurred. 295 Or. at 237, 666 P.2d 802 (emphasis added). In Davis, as in other criminal cases, the remedy of exclusion makes sense, because the persons (or "parties") whose interests are involved in the criminal prosecutionthe state and the defendantare the same persons who were involved in the illegal search. However, in a juvenile dependency proceeding, as discussed in detail above, the dispute involves not just the state and the person whose Article I, section 9, rights were violated in the search and who now seeks exclusion of the evidence. Rather, an additional critical interest is involved: that of the child who is the subject of the proceeding. The statutes make the child's interests paramount on a sufficient showing of danger to the child. Restoring the state and the parent who invokes the exclusionary rule to their previous "positions" may vindicate the privacy interest of the parent whose Article I, section 9, rights were violated and prevent the state from making use of illegally obtained evidence, but it would do so at the potential cost of failing to protect the interests of the vulnerable subject in a dependency proceeding, viz., the child.
Father is correct that Article I, section 9, protects his right to be "secure" against "unreasonable search, or seizure[,]" and nothing in the constitutional text or in this court's cases suggests that that right is only a rule of criminal procedure. If the warrant here was not properly based on probable cause, then father's rights under Article I, section 9, were violated. However, that conclusion does not answer the different question of whether the juvenile court must exclude that evidence in this dependency proceeding based on father's motion. As we have discussed above, the answer to that question, applying the test that this court articulated in Rogers, depends on the nature of father's liberty interest in the juvenile court's determination that child is within the jurisdiction of the court and whether that interest was "sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions that the reasons for the sanction of suppression *173 of evidence are equally applicable[.]" Rogers, 314 Or. at 120, 836 P.2d 127. As noted in our earlier analysis, father's interest in directing the upbringing of child free from the temporary conditions imposed by the jurisdictional order is not sufficiently analogous to the liberties and rights that may be at stake in other proceedings to require the exclusion from the juvenile proceeding, based on father's objection, of evidence unlawfully seized from him.
Having concluded that the Oregon Constitution does not require exclusion of the evidence illegally seized from father, we now turn to whether the Fourth Amendment requires the exclusion of such evidence in a juvenile dependency proceeding. The federal exclusionary rule is "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect[.]" United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Because of the remedial nature of the federal rule, courts must "weigh the likely social benefits of excluding unlawfully seized evidence against the likely costs" to determine whether it applies. INS v. Lopez-Mendoza, 468 U.S. 1032, 1041, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984). Using that framework, the United States Supreme Court has held that the exclusionary rule does not apply in most proceedings outside traditional criminal prosecutions. Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 364, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998) (parole revocation proceeding); Lopez-Mendoza, 468 U.S. at 1046, 104 S.Ct. 3479 (civil deportation hearing); United States v. Janis, 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976) (civil tax proceeding); Calandra, 414 U.S. at 351-52, 94 S.Ct. 613 (grand jury proceeding). But see Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 700-02, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (exclusionary rule applies in forfeiture proceedings due to "quasi-criminal" nature of such proceedings).
In determining the likely social benefits, the Supreme Court has stated that "the `prime purpose' of the [exclusionary] rule, if not the sole one, `is to deter future unlawful police conduct.'" Janis, 428 U.S. at 446, 96 S.Ct. 3021 (quoting Calandra, 414 U.S. at 347, 94 S.Ct. 613). For example, in Janis, the government attempted to use evidence seized by local law enforcement in a federal civil tax proceeding. The Court noted that the improperly seized evidence would be excluded in both a state and a federal criminal trial, so "the local law enforcement official [wa]s already `punished' * * *." 428 U.S. at 448, 96 S.Ct. 3021. Either the exclusion of the evidence in the criminal cases would sufficiently deter law enforcement from violating Fourth Amendment rights, in which case excluding the evidence from civil cases would have only a marginal effect, or law enforcement would not be deterred by exclusion, in which case the exclusionary rule is not a useful deterrent and should not be used at all. Id. at 453-54, 96 S.Ct. 3021. Thus, the Court held that the exclusionary rule did not apply in a civil tax proceeding. Similarly, the search here was conducted by local law enforcement officials investigating potential criminal activity. If it was improperly seized, the evidence will be excluded in any criminal proceedings against father. As in Janis, applying the exclusionary rule to the juvenile dependency proceeding would provide little, if any, additional deterrence.
In contrast, the likely costs of applying the exclusionary rule to juvenile dependency proceedings are great. In any proceeding, the cost of the exclusionary rule includes "the loss of often probative evidence and all of the secondary costs that flow from the less accurate or more cumbersome adjudication that therefore occurs." Lopez-Mendoza, 468 U.S. at 1041, 104 S.Ct. 3479. In a juvenile dependency proceeding, those "secondary costs" include the likelihood that the state will be unable to respond effectively to threats to a child's safety. In cases where illegally seized evidence is the state's only evidence of neglect or abuse, the state would be required to leave the child, potentially, in harm's way. Weighing the substantial social cost of ignoring children's safety against the minimal additional deterrence achieved by applying the exclusionary rule to juvenile dependency proceedings, we conclude that the federal exclusionary rule does not apply in juvenile dependency proceedings.
*174 The decision of the Court of Appeals and the judgment of the circuit court are affirmed.
NOTES
[1] ORS 419B.100(1) provides, in part:

"[T]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:
"* * * * *
"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others[.]"
[2] The court had entered a judgment of jurisdiction with respect to mother on May 17, 2007. That judgment is not at issue here.
[3] Under the statutory scheme for children who are determined to be within the jurisdiction of the juvenile court, the court must hold an additional hearing at least every 12 months that the child remains in substitute care, such as foster care. ORS 419B.470(6). If the juvenile court finds that the parent has made sufficient progress so that the child can be safely returned to his care, the court may order the child returned to the parent's home. See ORS 419B.476(2), (4) (describing determinations to be made and dispositional alternatives available to juvenile court following later hearings).
[4] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."
[5] The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."
[6] In State Forester v. Umpqua River Nav., 258 Or. 10, 26, 478 P.2d 631 (1970), this court declined to apply the exclusionary rule to civil proceedings. In that case, however, this court did not separately analyze the principles underlying the federal exclusionary rule based on the Fourth Amendment and those underlying the state exclusionary rule based on Article I, section 9.