Argued and submitted January 28, judgment of Tax Court affirmed
April 22, 2021

BERT BRUNDIGE, LLC,
*Plaintiff-Appellant,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant-Respondent.*

(TC 5325; SC S067316)

485 P3d 269

Taxpayer applied to the Douglas County assessor for tax exemptions under ORS 307.827 for several pieces of heavy equipment it used for logging road work. The assessor granted an exemption for taxpayer's excavator, but denied the exemptions for taxpayer's other equipment. Taxpayer brought this action in the Oregon Tax Court to challenge the assessor's denials, and the Tax Court affirmed. *Held*: (1) Excavators are the only type of equipment used for logging road work that are eligible for the exemption under ORS 307.827; and (2) the Tax Court was therefore correct to affirm the assessor's determination that taxpayer's excavator qualified for the exemption, but that its other equipment did not.

The judgment of the Tax Court is affirmed.

En Banc

On appeal from the Oregon Tax Court.*

Robert T. Manicke, Judge.

James R. Dole, Watkinson Laird Rubenstein, P.C., Grants Pass, argued the cause and filed the brief for appellant.

Kristen Gallino, Assistant Attorney General, Salem, argued the cause for respondent. Rolf C. Moan, Assistant Attorney General, filed the brief for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Kristen Gallino, Assistant Attorney General.

DUNCAN, J.

The judgment of the Tax Court is affirmed.

––––––––––––––
* 23 OTR 353 (2019).

**DUNCAN, J.**

This case comes to us as a direct appeal from the Tax Court. It concerns ORS 307.827, which exempts certain "logging equipment" from ad valorem property taxation. ORS 307.827(2) defines "logging equipment," and, in the Tax Court, the parties disagreed about what types of equipment fall within the definition. Specifically, they disagreed about what types of equipment used for logging road work—that is, logging road construction, maintenance, reconstruction, improvement, closure, or obliteration—fall within the definition. Plaintiff, Bert Brundige, LLC, argued that all types of equipment used for logging road work fall within the definition. Defendant, the Oregon Department of Revenue, argued that excavators are the only type of equipment used for logging road work that falls within the definition. The Tax Court agreed with defendant and entered a judgment in its favor. Plaintiff appealed. For the reasons explained below, we affirm the Tax Court's judgment.

Plaintiff is a limited liability company based in Douglas County. It is in the business of constructing, maintaining, repairing, and decommissioning logging roads. Plaintiff reports that "[a]t least 95%" of its business "is work on logging roads on public and private lands. It does virtually nothing else."

In 2016, plaintiff applied to the Douglas County tax assessor for tax exemptions under ORS 307.827 for several pieces of heavy equipment it used for logging road work. The equipment included a track hoe, graders, rollers, loaders, and bulldozers. The assessor granted an exemption for the track hoe, which the parties agree is also known as an excavator, but denied the exemptions for the other pieces of equipment.

Thereafter, plaintiff brought this action in the Tax Court to challenge the assessor's denials. Initially, the assessor was the named defendant, but, after the assessor failed to file an answer, the Department of Revenue intervened. *See* ORS 305.560(4)(a) (providing that the department "may intervene as a matter of right" in "any appeal before the tax court"). As mentioned, the parties disagreed about what

types of equipment used for logging road work fall within ORS 307.827's definition of "logging equipment." In response to cross-motions for summary judgment, the Tax Court held that excavators are the only type of equipment used for such work that falls within the definition. Based on that holding, the court affirmed the assessor's determination that plaintiff's track hoe was exempt but its graders, rollers, loaders, and bulldozers were not.[1]

Plaintiff then brought this appeal, in which the parties renew their arguments about the scope of the tax exemption under ORS 307.827. Thus, as framed by the parties, the question presented is one of statutory interpretation. We must determine what types of equipment used for logging road work qualify as "logging equipment" for the purposes of ORS 307.827.

As always when interpreting a statute, our task is to determine the legislature's intent, and we employ our familiar methodology, looking first at the text of the statute, in context, which is the best evidence of the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009); *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). At the first step of the analysis, we consider principles of statutory construction "that bear directly on how to read the text." *PGE*, 317 Or at 611. Some of those principles are statutory, including, for example, "the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.'" *Id*. (quoting ORS 174.010). Others are found in case law, including, for example, the principle that the use of a term in one section of a statute and not in another is evidence of a purposeful omission. *Id*.

---

[1] In its motion for summary judgment, plaintiff also argued that, even if excavators are the only type of equipment used for logging road work that falls within the definition of "logging equipment," "all of plaintiff's equipment, with the exception of its roller[s], would still qualify for exemption because the equipment is all used to excavate," in the sense that it is used for "digging in the earth." The Tax Court rejected plaintiff's interpretation of the term "excavator." The court held that the legislature intended "'excavator' *** to have a technical meaning as understood within the industry in 1999," when ORS 307.827 was enacted. *Bert Brundige, LLC v. Dept. of Rev.*, 23 OTR 353, 367 (2019). Thereafter, plaintiff filed a motion to withdraw its argument that its graders, loaders, and bulldozers are excavators. Thus, in the end, the only issue before the Tax Court was whether nonexcavators used for logging road work are eligible for the exemption.

Also at the first step of the analysis, we consider "the context of the statutory provision at issue, which includes other provisions of the same statute and other related statutes." *Id*. And, "[j]ust as with the court's consideration of the text of a statute," we utilize principles of statutory construction "that bear directly on the interpretation of the statutory provision in context," including the principle that "'where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all,'" *id*. (quoting ORS 174.010), as well as the principle that, "[w]hen the legislature uses different terms in related statutes, we presume that the legislature intended different meanings," *Gadalean v. SAIF*, 364 Or 707, 719, 439 P3d 965 (2019) (internal quotation marks omitted).

Even if we do not perceive any ambiguity in the statute's text, we proceed to the second step of the analysis, in which we consider any useful legislative history. *Gaines*, 346 Or at 172. And, "[i]f the legislature's intent remains unclear after examining text, context, and legislative history," we may, as a third step, "resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Id*.

As we will explain, the text of the tax exemption statute at issue, ORS 307.827, strongly indicates that the legislature intended that excavators would be the only type of equipment used for logging road work eligible for the exemption, and the legislative history confirms that intention. We turn first to the text of the statute and its context, which includes related statutes. *PGE*, 317 Or at 611.

ORS 307.827 establishes a tax exemption for "environmentally sensitive logging equipment." It was enacted in 1999, along with ORS 307.824, which sets out legislative findings and declarations relating to the exemption. ORS 307.824 states that the legislature "finds and declares" that

> "[t]he public policy of this state is to facilitate the transition of older logging equipment to newer equipment designed and manufactured to be as environmentally sensitive as current technology can provide, consistent with the need to match the equipment to the specifics of the site being harvested."

ORS 307.824(1). The statute further states that "[p]ersonal property taxes paid on logging equipment act as a disincentive to a transition to environmentally sensitive technology, because older equipment has a lower assessed value and therefore generates a correspondingly reduced property tax liability." ORS 307.824(2). And it concludes that "[a] property tax incentive is a means of facilitating the transition to newer, environmentally sensitive equipment and accomplishing the declared public policy." ORS 307.824(3).

In keeping with those findings and declarations, ORS 307.827 establishes the tax exemption at issue. ORS 307.827 has two subsections. The first subsection provides that "[e]nvironmentally sensitive logging equipment is exempt from ad valorem property taxation." ORS 307.827(1). The second subsection defines "environmentally sensitive logging equipment" and "logging equipment." ORS 307.827(2)(a)‑(c). As mentioned, the parties disagree about whether "logging equipment" includes all types of equipment used for logging road work and, therefore, includes plaintiff's graders, rollers, loaders, and bulldozers. Plaintiff argues that it does, relying on ORS 307.827(2)(b)(A). Defendant argues that it does not, relying on ORS 307.827(2)(b)(C).

With emphasis on the key text, ORS 307.827 provides, in full:

"(1)   Environmentally sensitive logging equipment is exempt from ad valorem property taxation.

"(2)   *As used in this section*:

"(a)   'Environmentally sensitive logging equipment' means logging equipment that was originally manufactured after 1992.

"(b)   *'Logging equipment' means machinery and equipment*:

"*(A)   Used in logging or forest management operations involving timber harvest*, including the felling, bucking, yarding, loading or utilization of timber, logs or wood fiber in the forest, *or used in reforestation, forest vegetation restoration, site preparation, vegetation control, stand and tree improvement or thinning*;

"(B)   That is specifically designed for activities related to water quality or fish and wildlife habitat protection in the forest; or

"*(C)   Consisting of excavators used in logging road construction, maintenance, reconstruction or improvements, including the closing or obliterating of existing forest roads.*

"(c)   'Logging equipment' does not include:

"(A)   Equipment used in nonforest applications for more than 20 percent of the tax year, as measured by the operating hours of the equipment.

"(B)   Equipment used in the manufacturing or milling of forest products.

"(C)   Power saws, hand tools, blocks or pulleys that are not a part of the equipment, rigging, shop equipment or support equipment.

"(D)   Logging equipment that is exempt from tax under ORS 307.831."

(Emphases added.) Thus, ORS 307.827(2) defines "logging equipment" both in terms of what it is, in paragraph (2)(b), and what it is not, in paragraph (2)(c).

Paragraph (2)(b) defines "logging equipment" based on the *activities* for which the equipment is *used or designed*. Subparagraph (2)(b)(A) refers to equipment "[u]sed in logging or forest management operations involving timber harvest" and equipment "*used in* reforestation, forest vegetation restoration, site preparation, vegetation control, stand and tree improvement or thinning." (Emphases added.) Subparagraph (2)(b)(B) refers to equipment "*specifically designed for* activities related to water quality or fish and wildlife habitat protection in the forest." (Emphasis added.) And subparagraph (2)(b)(C) refers to "excavators *used in* logging road construction, maintenance, reconstruction or improvements." (Emphasis added.)

From the text of the definition of "logging equipment" we can draw three conclusions about the legislature's intent regarding its scope.

First, the text shows that the legislature intended "logging equipment" to have a specific meaning for the

purposes of the tax exemption. It did not leave the term undefined, nor did it import a definition from another statute. Instead, it provided a definition of the term "[a]s used in this section." ORS 307.827(2).

Second, the text shows that the legislature chose not to use a general definition. It did not define "logging equipment" simply as equipment "used in logging or forest management operations." Instead, it defined "logging equipment" as equipment used or designed for specific logging-related activities. Subparagraph (2)(b)(A) illustrates that drafting choice.

Subparagraph (2)(b)(A) refers to several logging-related activities. The first phrase of the subparagraph refers to equipment "[u]sed in logging or forest management operations *involving timber harvest*," and that phrase is followed by examples of timber harvesting activities, including "felling, bucking, yarding, [and] loading." (Emphasis added.) That wording indicates that the legislature intended the first part of subparagraph (2)(b)(A) to cover equipment *used in timber harvesting, as opposed to other activities*. That indication is supported by the remainder of the subparagraph, which refers to equipment "*used in reforestation, forest vegetation restoration,*" *and other specific activities*.

Thus, the text of subparagraph (2)(b)(A) indicates that the legislature did not intend the subparagraph to cover all equipment used in logging-related activities. If it had, it could have simply stated that "logging equipment" means equipment "used in logging or forest management operations." There would have been no need for the rest of subparagraph (2)(b)(A); it would be surplusage. But the legislature included the rest of subparagraph (2)(b)(A), and, as mentioned, when interpreting a statute, we are not to omit what the legislature has inserted, and, when a statute contains several particulars, we are to interpret it in a manner that will give full effect to all of them. Thus, the text of subparagraph (2)(b)(A) indicates that the subparagraph should not be construed to cover equipment used in all logging-related activities; instead, it should be construed to cover only equipment used in the listed activities.

Third, and relatedly, the text shows that, when setting out the equipment it intended to include within the definition of "logging equipment," the legislature listed the equipment in three separate subparagraphs and those subparagraphs refer to different logging-related activities. As just discussed, subparagraph (2)(b)(A) includes a fairly long list of activities. Notably, however, it does not include logging road work; that is, it does not include logging road construction, maintenance, reconstruction, improvement, closure, or obliteration. The absence of those activities indicates that the legislature did not intend subparagraph (2)(b)(A) to cover equipment used for logging road work.

That indication is reinforced by the text of subparagraph (2)(b)(C), which does refer to logging road work. Again, it provides that "logging equipment" means equipment "[c]onsisting of excavators used in logging road construction, maintenance, reconstruction or improvements, including the closing or obliterating of existing forest roads." It shows that, when the legislature defined "logging equipment," it was thinking about equipment used in logging road work. Thus, the absence of logging road work in subparagraph (2)(b)(A) is unlikely to have been an oversight. If the legislature had intended subparagraph (2)(b)(A) to cover equipment used in logging road work, it could have listed road construction and other activities in that subparagraph, but it did not. Instead, it listed them in subparagraph (2)(b)(C). Thus, it appears that the legislature intended subparagraph (2)(b)(C) to cover equipment used for logging road work and that it limited that equipment to excavators.

In sum, the text of ORS 307.827(2)(b) indicates that the legislature did not intend the definition of "logging equipment" to cover all equipment used in logging-related activities. Instead, it limited the definition to equipment used or designed for specific, listed activities. And, although it clearly was thinking about equipment used in logging road work, it did not include such equipment in subparagraph (2)(b)(A), but instead included it in subparagraph (2)(b)(C) and limited it to excavators. Thus, the text of ORS 307.827 (2)(b) strongly indicates that, as the Tax Court concluded, excavators are the only type of equipment used in logging road work eligible for the exemption.

Plaintiff disagrees. In plaintiff's view,

"ORS 307.827(2)(b) defines 'logging equipment' as equipment: (A) used in logging and forest management; (B) designed for water quality or fish and wildlife habitat protection; *or* (C) for 'excavators' ***only*** when they are used for logging road construction, maintenance and obliteration."

(Emphases in original.) Plaintiff reads subparagraph (2)(b)(A) as covering all equipment used in "logging and forest management." Based on that broad reading, plaintiff argues that subparagraph (2)(b)(A) covers all equipment used for logging road work. Plaintiff reasons that, because logging roads provide access to areas where logging and forestry management work is done, equipment used for logging road work qualifies as equipment used for logging and forestry management work. According to plaintiff, all of its equipment falls within the definition of "logging equipment" because it is used for logging road work and logging roads "exist solely" for the purpose of conducting the activities listed in subparagraph (2)(b)(A).

Plaintiff's broad reading of subparagraph (2)(b)(A) is in tension with the full text of that subparagraph. As discussed above, subparagraph (2)(b)(A) does not define "logging equipment" simply as equipment used in "logging or forest management operations." Instead, the phrase "logging or forest management operations" is modified by the phrase "involving timber harvest," indicating that the first part of subparagraph (2)(b)(A) applies to equipment used in timber harvesting, not all equipment used in logging or forest management work, much less all equipment used to provide access to areas where logging or forest management work is done. Moreover, as also discussed above, if plaintiff's reading were correct, then the legislature would not have needed to include the remainder of subparagraph (2)(b)(A).

Nor would it have needed to include subparagraph (2)(b)(C), which covers excavators used for logging road work. As defendant points out, if subparagraph (2)(b)(A) exempted all equipment used for logging road work, then "the legislature would have had no reason to fear that anyone would ever argue that, when an excavator is used to build logging

roads, it somehow would fall outside the exemption in (A) and would be subject to taxation."

Plaintiff recognizes that, if all equipment used for logging road work is covered by subparagraph (2)(b)(A), then subparagraph (2)(b)(C) appears to be unnecessary. So, plaintiff offers an explanation for the legislature's inclusion of subparagraph (2)(b)(C); it argues that the purpose of the subparagraph is to make it clear that an excavator used in logging road work qualifies as "logging equipment." Specifically, plaintiff argues:

> "Defendant has never contested plaintiff's position that an 'excavator' is not the kind of thing that is typically used in logging, for the simple fact that it would ordinarily serve no obvious function in forest management operations. In effect, subparagraph (C) is a demonstration by the legislature of what is ***not*** deemed logging equipment—'excavators' subject to a narrow exception—when they are used to build, maintain or decommission logging roads."

(Emphasis in original; internal footnote omitted.)

There is, however, a problem with plaintiff's explanation of subparagraph (2)(b)(C). As the list of plaintiff's own equipment shows, excavators are not the only pieces of equipment that are used for logging road work but not for timber harvesting or the other activities listed in subparagraph (2)(b)(A). For example, as plaintiff acknowledged at oral argument, although graders and rollers are used for logging road work, they are not used for timber harvesting or any other logging-related activities. If, as plaintiff argues, the purpose of subparagraph (2)(b)(C) is to make it clear that equipment that is "not the kind of thing that is typically used in logging" is eligible for the tax exemption when used for logging road work, then it seems that the legislature would have included graders and rollers in subparagraph (2)(b)(C) as well.

Thus, plaintiff's textual argument—*viz.*, that subparagraph (2)(b)(A) covers all equipment used in "logging or forest management operations," including all equipment used in logging road work—is implausible because it does not account for the full text of subparagraph (2)(b)(A), which refers to specific, listed activities. Moreover, it would render

much of the definition, including subparagraph (2)(b)(C), redundant for no apparent reason.

In addition to its textual argument, plaintiff makes an argument based on other statutes relating to logging and forestry, specifically, the Forest Practices Act (FPA), which concerns the regulation of forest practices. *See* ORS 527.610 (defining the FPA as "ORS 527.610 to 527.770, 527.990(1) and 527.992"); ORS 527.630 (identifying the public policy underlying the FPA). The FPA defines terms "[a]s used in" the FPA. ORS 527.620. As plaintiff notes, it defines a "forest practice" to include "any operation conducted on or pertaining to forestland, including *** [r]oad construction or maintenance," ORS 527.620(5)(b), and it defines "operation" to include "any commercial activity relating to the establishment, management, or harvest of forest tree species," with some exceptions, ORS 527.620(12). Based on those FPA definitions, plaintiff argues that "[t]his court should assume that anyone in the forest industry would know that specialized terminology like 'forest practice' or 'operation' would naturally include road construction, maintenance or decommissioning." Essentially, plaintiff argues that we should assume that, when the legislature defined "logging equipment" for the purposes of the tax exemption provided by ORS 307.827, it intended to import definitions from the FPA.

But that argument is at odds with the the definition of "logging equipment" in ORS 307.827. The definition does not cross-reference the FPA definitions. It does not even use the same terms as the FPA. If, as plaintiff argues, the legislature had intended to define "logging equipment" as all equipment used in "forest practices," it could have done so, but it did not. Instead, it defined "logging equipment" as equipment used or designed for specific, listed activities. Thus, even assuming, as plaintiff does, that the FPA qualifies as context for ORS 307.827, the FPA does not aid plaintiff; if anything, it shows that the legislature knows how to define a term to include logging road work and it did so in the FPA, but not in ORS 307.827(2)(b)(A).

Plaintiff argues that there is "no apparent reason" that the legislature would define "forest practice" in the

FPA to include logging road work, but then define "logging equipment" in ORS 307.827 in a way that does not include all equipment used for logging road work. That argument is unavailing. The FPA relates to the regulation of forest practices, whereas ORS 307.827 relates to tax exemptions. The legislature could reasonably choose to include logging road work among the activities that can be regulated under the FPA without also choosing to grant tax exemptions for all equipment used in logging road work. *See King Estate Winery, Inc. v. Dept. of Rev.*, 329 Or 414, 421-22, 988 P2d 369 (1999) (rejecting taxpayer's argument that, because using land as a winery constitutes a "farm use" for purposes of certain land use statutes, equipment used to make and sell wine qualified as "farm machinery and equipment" for the purposes of a tax exemption statute).

Plaintiff makes a third and final argument to support its claim that subparagraph (2)(b)(A) should be read broadly to cover all equipment used in logging road work. It argues that, because the policy underlying the tax exemption is to "facilitat[e] the transition to newer, environmentally sensitive equipment," ORS 307.824(3), equipment should be eligible for the exemption regardless of whether it is used to build a logging road or used to harvest trees. Plaintiff asserts that the same piece of equipment could be used for both activities and that "there is no discernable reason why the logging road builder like plaintiff should not have the same incentive to invest in more environmentally sensitive equipment as his counterpart whose job is to actually harvest growing trees."

Plaintiff has a point. Given the purpose of the tax exemption, it could make sense to define "logging equipment" to include all equipment used in logging-related activities. But exemptions come at a cost to tax revenues, which support government services. Thus, when determining how broad an exemption should be, the legislature must balance competing interests. And that is what the legislature did when it enacted ORS 307.827. As described below, the legislature considered exemptions that would have covered more equipment—including more equipment used in logging road work—but, after objections based on the financial ramifications that such exemptions would have on public schools

and other government services, the legislature opted for a narrower exemption.

Four years before enacting ORS 308.827, the legislature passed a bill, Senate Bill (SB) 252 (1995), to exempt certain "logging equipment" from property taxes. The bill defined "logging equipment" broadly, and the definition expressly included equipment involved in "[l]ogging road construction, reconstruction, and improvements." *Id*. § 5(2)(c). But the bill did not become law. Governor Kitzhaber vetoed it because of the loss of revenue it would cause and the resulting financial burden it would impose on public schools and other taxpayers. In a letter explaining his veto, the Governor wrote:

> "I do not believe that it is fair to relieve some businesses from property taxes without taking into account the impact on taxpayers and other businesses. The specific property tax exemption for logging machinery and equipment would unfairly shift the tax burden on to local schools and other taxpayers.
>
> "Senate Bill 252 would remove $255 million worth of logging equipment from property tax rolls. Over a three year period it would result in the direct loss of $3.2 million in revenue dedicated to schools. Over the same time period, it would shift $2 million to other taxpayers."

Senate Journal, Regular Session, SB 252, SJ-187 (Letter from Gov. John A. Kitzhaber) (1995).

Then, in 1999, the legislature considered two bills providing for tax exemptions for logging equipment. One bill, House Bill (HB) 2093 (1999), included a broad tax exemption for "logging equipment," which it defined to include equipment used for five different categories of activities, including logging road work:

> "(1)   All logging equipment is exempt from ad valorem property taxation.
>
> "(2)   *As used in this section, 'logging equipment'*:
>
> "(a)   *Means any tangible personal property, including but not limited to logging machinery and equipment, used in logging or forest management operations involving one or more of the following*:

"(A)   Timber harvest, including the felling, bucking, yarding, loading or utilization of timber, logs or wood fiber in the forest;

"(B)   *Logging road construction, maintenance, reconstruction or improvements, or the closing or obliteration of existing roads*;

"(C)   Slash burning, slashing, scarification, stream rehabilitation, miscellaneous forest management and fire trail construction;

"(D)   Water quality or fish and wildlife habitat protection activities in the forest, including but not limited to stream and riparian improvement, sediment control measures or other forest habitat protection measures; or

"(E)   Reforestation, forest vegetation restoration, site preparation, vegetation control, stand and tree improvement, thinning or other miscellaneous forest management work."

HB 2093 (1999), A-Engrossed, § 5 (May 12, 1999) (emphases added).[2]

HB 2093 was introduced in the House in January 1999. It was referred to the House Commerce Committee, which, after holding public hearings and a work session, referred it to the House Revenue Committee in May. The Revenue Committee did not take any action on the bill.

Meanwhile, another bill, House Bill (HB) 2045 (1999), was proceeding through the legislature. It did not include a tax exemption initially; it related to tax refunds and deficiencies. But, in July, while the bill was in the Senate, the Senate Revenue Committee considered two competing amendments, the "-2 amendments" and the "-4 amendments." Both sets of amendments proposed deleting the bill's original provisions and replacing them with provisions for tax exemptions for certain "logging equipment."

---

[2] HB 2093 and SB 252 both defined "logging equipment" to include "any tangible personal property, including but not limited to logging machinery and equipment" involved in one or more listed activities, specifically including logging road work. *See* SB 252 (1995) (including equipment involved in "[l]ogging road construction, reconstruction, and improvements"); HB 2093 (1999), A-Engrossed (May 12, 1999) (including equipment involved in "[l]ogging road construction, maintenance, reconstruction or improvements, or the closing or obliteration of existing roads").

The -2 amendments were the broader of the two. They included a definition of "logging equipment" that was nearly identical to that in HB 2093.[3] HB 2045 (1999), -2 amendments (June 8, 1999). The -4 amendments were narrower. In pertinent part, the definition of "logging equipment" in the -4 amendments provided:

"(b) 'Logging equipment' means machinery and equipment:

"(A) Used in logging or forest management operations involving timber harvest, including the felling, bucking, yarding, loading or utilization of timber, logs or wood fiber in the forest, or used in reforestation, forest vegetation restoration, site preparation, vegetation control, stand and tree improvement or thinning;

"(B) That is specifically designed for activities related to water quality or fish and wildlife habitat protection in the forest; or

"(C) Consisting of excavators used in logging road construction, maintenance, reconstruction or improvements, including the closing or obliterating of existing forest roads."

HB 2045 (1999), -4 amendments (June 8, 1999). Thus, unlike the -2 amendments, which contained a list of five categories of activities, the -4 amendments contained a list of three.

Documents presented to the Senate Revenue Committee clearly explained the differences between the amendments, including the differences in the definitions of "logging equipment." A revenue impact statement regarding the -4 amendments reported that "[t]he definition of logging equipment narrows the equipment used in road construction to excavators only." Exhibit 12, Senate Committee on Revenue, HB 2045, July 12, 1999. Likewise, a document entitled, "Differences between -2 and -4 Amendments" stated that, as to "[m]achinery used in logging road construction," the -2 amendments had a "broader definition including any equipment used in the construction, maintenance or improvements of forest roads," whereas the -4 amendments

---

[3] The definition of "logging equipment" in the -2 amendments was the same as in HB 2093, except that it omitted "scarification" from the category of activities that included "slash burning."

"restrict[ed] the equipment to excavators." Exhibit 13, Senate Committee on Revenue, HB 2045, July 12, 1999.

The Senate Revenue Committee discussed the differences between the amendments, including the differences between their definitions of "logging equipment," at a public hearing. Minutes, Senate Committee on Revenue, HB 2045, July 12, 1999, 3. During the public hearing, Mike Miller, the Executive Vice President of Associated Oregon Loggers, Inc., testified in support of the -4 amendments. In his testimony, Miller referred to SB 252, the 1995 bill that the Governor had vetoed, and he explained that the -4 amendments were based on conversations between representatives of his organization, representatives from the Governor's office and the Association of Oregon Counties. Audio Recording, Senate Committee on Revenue, HB 2045, July 12, 1999, at 11:20 (statement of Mike Miller); Testimony, Senate Committee on Revenue, HB 2045, July 12, 1999, Ex 8 (written statement of Mike Miller). He reported that the -4 amendments were the result of a compromise between interested parties, and he urged the committee to approve them, which it did. The amended bill was subsequently passed by legislature and signed by the Governor, and the exemption (with the narrower definition of "logging equipment") was ultimately codified as ORS 308.287.

To summarize, the legislative history of ORS 308.287 shows that, prior to its enactment, there had been legislative efforts to establish a broad tax exemption for "logging equipment," defined to include all types of equipment used for logging road work, but those efforts had failed. After those failures, the legislature was presented with an explicit choice between another broad exemption, which was similar to those that had failed, and a narrower one, which was the result of a compromise between interested parties, and the legislature chose the narrower one, which they had been told restricted the definition of "logging equipment" so that excavators were the only type of equipment used for logging road work that would be eligible for the exemption. Thus, the legislative history shows that the legislature considered, but rejected, a definition of "logging equipment" as broad as the one for which plaintiff advocates.

Consequently, based on the text and legislative history of ORS 307.827, we conclude that excavators are the only type equipment used for logging road work that falls within the statute's definition of "logging equipment." Therefore, the Tax Court was correct to affirm the assessor's determination that plaintiff's excavator qualified for the exemption, but that its graders, rollers, loaders, and bulldozers did not.

The judgment of the Tax Court is affirmed.