No. 678 September 25, 2024 225

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of T. L. B.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*
*v.*
T. L. B.,
*Appellant.*
Douglas County Circuit Court
19CC06783; A176794

George William Ambrosini, Judge.

Submitted November 16, 2023.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Andrew D. Robinson, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, and Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Appellant challenges a judgment committing him to the jurisdiction of the Psychiatric Security Review Board (PSRB) for up to 24 months after finding that he is an "extremely dangerous person" under ORS 426.701. Appellant raises three assignments of error. First, he argues that the trial court should have dismissed the commitment petition, because ORS 426.701 and ORS 426.702 operate as a criminal prosecution and he was not afforded adequate state and federal constitutional protections. Second, appellant argues that the trial court erred by declining to rule on his motions to suppress and controvert. Third, appellant argues that the trial court erred by finding that he is an extremely dangerous person. We affirm.

For purposes of this appeal, the underlying facts are largely not in dispute. Appellant experiences paranoid ideations due to his delusional disorder. According to expert testimony adduced at petitioner's civil commitment hearing, the "hallmark symptom" of that mental disorder is "a very firmly held fixed idea that remains even in overwhelming evidence to the contrary." As a result of his delusions, appellant believed that a local restaurant, and anyone who may have frequented it, including appellant's landlord and the landlord's housemate, were part of a broad conspiracy involving a prostitution and drug ring. And because of those delusions, he killed his landlord and the landlord's housemate.

After an evaluation, appellant was found unfit for trial due to his mental disorder because he lacked the capacity to understand the nature of the charges against him. He believed that Oregon State Hospital personnel and members of the trial court, including his legal team, the trial judge, and the prosecutor, were all preventing him from exposing the supposed criminal activity at that restaurant. Appellant's mental disorder was resistant to medication, and despite multiple attempts, medical providers were unable to restore his competency to stand trial.

The state then initiated a petition for civil commitment pursuant to ORS 426.701—an "extremely dangerous person" proceeding—which authorizes a court to commit

an individual to the jurisdiction of the PSRB.[1] During the 14-day civil commitment hearing, appellant filed motions to suppress and controvert, arguing that the extremely dangerous person proceeding functioned as a criminal prosecution. Reasoning that the exclusionary rule does not apply in a civil proceeding, the trial court did not "move forward" with the motions.

Ultimately, the trial court determined that appellant was extremely dangerous, because his mental disorder was resistant to treatment, and his mental disorder caused him "to present a serious danger of safety of other persons by reason of an extreme risk that he will inflict grave or potentially lethal physical injury on other persons in the foreseeable future." Thus, appellant was committed to the jurisdiction of the PSRB.

In appellant's first assignment, he contends that the trial court erred in denying his motion to dismiss the civil commitment petition because ORS 426.701 to 426.702, the statutes governing the extremely dangerous person proceeding, are unconstitutional. Appellant argues that, unlike a civil commitment proceeding governed by ORS 426.005 to 426.315, the extremely dangerous person proceeding functions as a criminal prosecution without the necessary federal and state constitutional protections.[2] Whether a

---

[1] ORS 426.701(1)(a) provides that a person is "extremely dangerous" if an individual:

"(A) Is at least 18 years of age;

"(B) Is exhibiting symptoms or behaviors of a qualifying mental disorder substantially similar to those that preceded the act described in subsection (3)(a)(C) of this section; and

"(C) Because of a qualifying mental disorder:

"(i) Presents a serious danger to the safety of other persons by reason of an extreme risk that the person will inflict grave or potentially lethal physical injury on other persons; and

"(ii) Unless committed, will continue to represent an extreme risk to the safety of other persons in the foreseeable future."

[2] Appellant also argues that the periodic recommitment procedure violates due process; however, that argument is unpreserved. As appellant does not ask for plain error review, we do not consider that argument on appeal. *See State v. McIntire*, 328 Or App 328, 335, 537 P3d 608 (2023), *rev den*, 372 Or 26 (2024) (explaining that ordinarily we "will not proceed to the question of plain error unless an appellant has explicitly asked us to do so") (internal quotation marks omitted).

statute is constitutional presents a question of law, *State v. Howard*, 325 Or App 696, 701, 529 P3d 247, *rev den*, 371 Or 333 (2023), and for the reasons discussed below, we conclude that ORS 426.701 to 426.702 does not function as a criminal proceeding.

Because appellant's argument is based on a comparison of the civil commitment proceedings governed by ORS 426.006 to 426.415—which appellant appears to acknowledge are constitutional—to the extremely dangerous person proceedings, we briefly discuss both. Civil commitment proceedings, governed by ORS 426.005 to 426.415, are designed to provide care for mentally ill persons as well as to provide for the safety of the community. OAR 309-033-0220. Under that civil commitment scheme, two persons, the local health officer or a "magistrate or judge of a court of a federally recognized Indian tribe located" in Oregon, may initiate a civil commitment. ORS 426.070 (1)(a) to (c). A commitment under that proceeding is for "an indefinite period of time up to 180 days," if the individual has not made the requisite progress to be released. ORS 426.301(3)(c).

In contrast, ORS 426.701 and ORS 426.702, which govern the extremely dangerous person proceeding, were adopted to ensure that individuals who pose a risk of violence because of a mental illness that is resistant to treatment would not be released to the community until the symptoms of that mental illness had been ameliorated. *See* OAR 859-200-0005 (explaining purpose of extremely dangerous civil commitment program); Audio Recording Senate Committee on Judiciary, SB 421, Apr 18, 2013, at 147:53 (statement of Sen Floyd Prozanski), https://olis.oregonlegislature.gov/liz/2013R1/Measures/Overview/SB421 (accessed Sept 11, 2024) (explaining purpose of statutes). Under those statutes, a district attorney petitions the court to initiate an "extremely dangerous person proceeding." ORS 426.701(2)(a). That proceeding is predicated on the fact that the individual suffers from a qualifying mental disorder that is resistant to treatment, and because of that mental disorder, the individual committed one of six criminal acts enumerated in ORS 426.701(3)(a)(C)(i) to (vi), which include, as relevant here, causing the death of another person. *See* ORS 426.701(1)(a)(c)

to 426.701(2)(a) (describing the extremely dangerous person proceedings).

An initial commitment of an extremely dangerous person is for a maximum of 24 months; if the individual has not made the requisite progress to be released, then the commitment is continued for an additional 24 months. ORS 426.702(3)(a). The PSRB must hold a hearing within six months of that initial commitment to make placement decisions and determine whether the person is eligible for conditional release or discharge. ORS 426.701(6)(a). And, "[a]t any time during the commitment to a state hospital, the superintendent of the state hospital may request to determine the status of the person's commitment under the jurisdiction of the board." ORS 426.701(7)(a). If "the board determines *** that the person no longer suffers from a qualifying mental disorder that is resistant to treatment or is no longer extremely dangerous, the board shall discharge the person." ORS 426.701(6)(d).

With those two civil commitment schemes in mind, we address whether, as appellant asserts, ORS 426.701 to 426.702 operate as an unconstitutional criminal proceeding. Generally, commitment proceedings based on mental incapacity are permissible "without turning *** into criminal cases, so long as the detention is for a non-punitive purpose and ends with that purpose." *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 103, 570 P2d 52 (1977). "It is the punitive use of detention, not the detention as such, that defines the criminal offense." *Id*. Appellant contends that, unlike a civil commitment proceeding under ORS 426.005 to 426.415, an extremely dangerous person proceeding serves a punitive purpose because the commitment periods are longer, require that a dangerous person present an "extreme risk," and are initiated by the district attorney. ORS 426.701 (1) - (2)(a). We disagree and conclude, for the reasons discussed below, that the extremely dangerous person proceeding does not function as a criminal proceeding.

The question turns on whether the extremely dangerous person procedure set forth in ORS 426.701 authorizes detainment for a "punitive purpose," or rather, "employs compulsory confinement in looking after persons suffering

from mental incapacity." *Brown*, 280 Or at 103. As discussed above, the purpose of the extremely dangerous person proceeding is to provide mental health treatment and the confinement ends when that purpose—to ensure that an individual's mental health symptoms have been ameliorated such that they do not pose a danger to themselves or the general public—ends. Although the extremely dangerous person proceeding employs longer commitment periods than the civil commitment proceeding governed by ORS 426.005 to 426.415, appellant has identified no source for the conclusion that the length of commitment is for a punitive purpose; rather, it appears that those presumptively longer periods enable an individual with a mental illness that is resistant to treatment to receive the necessary medical care. Audio Recording, Senate Committee on Judiciary, SB 421, Apr 18, 2013, at 1:47:53 (comments of Sen Floyd Prozanski), https:// olis.oregonlegislature.gov/liz/2013R1/Measures/Overview/ SB421, (accessed Sept 11, 2024) (noting that extremely dangerous person proceeding is the "appropriate way *** [to] ensure that people will have the best opportunity to receive the treatment they might need, and also not be a danger to themselves or others"). That nonpunitive rationale mirrors the ORS 426.005 to 426.415 civil commitment procedure. And ORS 426.701 requires that an individual be discharged when the commitment criteria no longer exist, confirming the nonpunitive purpose. *See* ORS 426.701(6)(c) (explaining that a commitment will end when the individual "can be controlled in the community with proper care, medication, supervision, and treatment"); *see also* ORS 426.701(6)(d) (explaining that if "the board determines *** that the person no longer suffers from a qualifying mental disorder that is resistant to treatment or is no longer extremely dangerous, the board shall discharge the person").

Although appellant acknowledges that the civil commitment proceedings under ORS 426.005 to 426.415 are "predicated on the person's dangerousness," he argues that the "extreme risk" requirement of ORS 426.701(1)(a)(C)(i) and (ii) "suggests an incapacitating purpose" that is unmoored from "the prospect of treatment." However, the extreme risk requirement requires that an individual pose an extreme risk of serious danger to the physical safety of others *because*

of their treatment-resistant mental disorder. ORS 426.701 (1)(C)(i), (ii). And as explained above, an individual must be released from commitment when the symptoms of the mental disorder are alleviated, expressly tethering successful treatment to release. Similarly, appellant argues that the fact that a district attorney initiates the proceeding indicates a punitive purpose. However, district attorneys represent the state in civil commitment proceedings under ORS 426.100 to 426.415 and initiate or prosecute many civil matters that do not implicate criminal sanctions. *See e.g.*, ORS 35.560(1) (noting that a district attorney "shall [c]ommence and prosecute" condemnation actions in their judicial district). Like ORS 426.005 to 416.415's civil commitment proceedings, we conclude that the extremely dangerous person proceeding is not punitive in nature, and, therefore, is not a criminal proceeding that requires the full panoply of constitutional protections afforded to a criminal defendant. For the same reason, we conclude that ORS 426.701 does not violate the United States Constitution. *Addington v. Texas*, 441 US 418, 428, 99 S Ct 1804, 60 L Ed 2d 323 (1979) (explaining that "a civil commitment proceeding can in no sense be equated to a criminal proceeding" because commitment "is not exercised in a punitive sense").

In his second assignment of error, appellant contends that the trial court erred by declining to hear his motions to suppress and controvert. The state responds that that argument is unpreserved, because, beyond asserting that the proceedings are criminal in nature, appellant made no argument below that the exclusionary rules apply to civil commitment proceedings. However, appellant's argument on appeal is exactly that—that the exclusionary rule is applicable because the proceeding is analogous to a criminal proceeding—an argument the trial court addressed and rejected.[3] Citing the same cases and raising the same arguments, appellant renews the argument on appeal. The state's preservation argument is not well-taken.

---

[3] The trial court explained:

"[T]his is not a situation where the Court would be holding a Motion to Suppress in this civil commitment hearing. This is not a criminal prosecution. *** [T]he alleged mentally ill person is [not] facing incarceration and that type of sanction. It's commitment, among other things that's sought, it includes treatment at the State Hospital."

Whether the remedy of suppression of Article I, section 9's, protection against unreasonable search and seizure applies in a civil commitment proceeding is a question of law.[4] *T. M. M. v. Lake Oswego School Dist.*, 198 Or App 572, 579, 108 P3d 1211 (2005).

The remedy of suppression of evidence obtained from an unlawful search or seizure is available in criminal proceedings. ORS 133.673. Like other safeguards afforded to criminal defendants, the remedy of the suppression of evidence seized in violation of Article I, section 9, may extend to situations analogous to a criminal proceeding such that a "petitioner's liberty interest is sufficiently analogous to the liberty interest at stake in traditional criminal prosecutions." *State ex rel Juv. Dept. v. Rogers*, 314 Or 114, 120, 836 P2d 127 (1992) (extending exclusionary rule to juvenile probation revocation proceedings). As explained above, the hallmark distinction of a criminal proceeding justifying application of those procedural safeguards is whether the proceeding is punitive in nature. *See, e.g.*, *id*. (citing *State v. Donovan*, 305 Or 332, 335, 751 P2d 1109 (1988) (noting that a "probation revocation proceeding invokes the criminal sanctions pending against the defendant" to justify extending the exclusionary rule to juvenile probation revocation); *see also State ex rel Dept. of Human Services v. W. L. P.*, 345 Or 657, 665, 202 P3d 167 (2009) (recognizing that the Oregon Supreme Court has extended the exclusionary rule beyond criminal proceedings only to the "analogous setting" of juvenile probation revocations). And, as we concluded above, the extremely dangerous person proceeding is not sufficiently analogous to a criminal prosecution to import the safeguards afforded to criminal defendants, including the right to suppress evidence.

Next, appellant argues that the *federal* exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights," should apply to the extremely

---

[4] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

dangerous person proceeding. *United States v. Calandra*, 414 US 338, 348, 94 S Ct 613, 38 L Ed 2d 561 (1974). Appellant contends that that rule applies, because "the benefits of exclusion outweigh the costs," an argument to which the state does not respond.

When determining the applicability of the federal exclusionary rule beyond criminal proceedings, courts must "weigh the likely social benefits of excluding unlawfully seized evidence"—specifically, the deterrent effect on unlawful police conduct—"against the likely costs." *W. L. P.*, 345 Or at 667 (internal quotation marks omitted). And the Oregon Supreme Court has not extended the rule beyond criminal and quasi-criminal proceedings. *Id.* at 668; *see also State Forester v. Umpqua River Nav.*, 258 Or 10, 14, 15-16, 478 P2d 631 (1970) (declining to extend federal exclusionary rule to civil case brought by government because it only applies in criminal and quasi-criminal cases where the "object, like a criminal proceeding, is to penalize for the commission of an offense against the law" (internal quotation marks omitted)).

The federal exclusionary rule does not extend to Oregon's extremely dangerous person proceedings. As the Oregon Supreme Court has already determined, extending the federal exclusionary rule to law enforcement seizures in noncriminal proceedings offers little additional deterrent. *W. L. P.*, 345 Or at 668 ("[T]he search here was conducted by local law enforcement officials investigating potential criminal activity. If it was improperly seized, the evidence will be excluded in any criminal proceedings" and thus extending the exclusionary rule "would provide little, if any, additional deterrence."). That minimal deterrence is outweighed by the benefit of preserving the safety and well-being of the individual and the general public. *See id.* at 669 (concluding that the federal exclusionary rule does not apply to juvenile dependency proceedings after "[w]eighing the substantial social cost of ignoring children's safety against the minimal additional deterrence"). In sum, we conclude that neither the state nor federal exclusionary rules apply to the extremely dangerous person proceeding.

In his final assignment of error, appellant contends that the trial court erred in concluding that he is an extremely dangerous person. Appellant concedes that the evidence showed that he "presented a heightened risk of future violence because of his mental disorder." However, he argues that ORS 426.701 does not define "extreme risk" and that the state's witness, a psychologist who specializes in risk assessment, "acknowledged that risk instrumentation is not a particularly robust science." Thus, according to appellant, the evidence does not show that his risk of violence was "extreme"; he only had a "heightened risk of future violence" and "nothing beyond that." The state responds that the evidence demonstrates that "future harm is highly likely," which is an "extreme risk." We agree with the state that the evidence in this case meets the statutory requirement.

In determining whether the record was sufficient to find by clear and convincing evidence that appellant qualified as an extremely dangerous person, we "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. W. W.*, 289 Or App 724, 726, 410 P3d 1032 (2018) (internal quotation marks omitted). To the extent that appellant's argument presents a question of statutory interpretation, we review such inquiries for legal error. *State v. Bernhardt*, 277 Or App 868, 872, 376 P3d 316, *rev den*, 277 Or 868 (2016).

ORS 426.701(1)(a)(C) provides, in part, that a person is extremely dangerous if the person:

> "(i)   Presents a serious danger to the safety of other persons by reason of an *extreme risk* that the person will inflict grave or potentially lethal physical injury on other persons; and

> "(ii)   Unless committed, will continue to represent an *extreme risk* to the safety of other persons in the foreseeable future."

(Emphases added.)

"Extreme risk" is not defined in ORS chapter 426. In those instances, "we generally assume that the legislature

intended to use the term in a manner consistent with its plain, natural, and ordinary meaning, and we often consult dictionaries for guidance in determining what the legislature would have understood a term to mean." *Kinzua Resources v. DEQ*, 366 Or 674, 681, 468 P3d 410 (2020) (internal quotation marks omitted). We also "consider the context of the statutory provision at issue, which includes other provisions of the same statute or other related statutes." *Bert Brundige, LLC v. Dept. of Rev.*, 368 Or 1, 4, 485 P3d 269 (2021) (internal quotation marks omitted).

"Extreme" generally means "existing in a very high degree." *Webster's Third New Int'l Dictionary* 807 (unabridged ed 2002). Applying that definition—a definition with which appellant does not quibble—requires a court to determine that, because of an individual's mental disorder, they present a very high degree of risk of inflicting "grave or potentially lethal physical injury" and continue to represent a very high degree of risk "to the safety of other persons in the foreseeable future." ORS 426.701(1)(a)(C)(i), (ii).

The statutory context supports that construction. ORS 426.005 to 426.415, the related civil commitment scheme discussed above, provides that a "person with mental illness" includes a "person who, because of mental disorder, is *** [d]angerous to self or others." ORS 426.005(1)(f)(A). To justify committing someone based on the risk of violence, a trial court must find "that actual future violence is highly likely." *State v. C. L.*, 313 Or App 539, 542, 495 P3d 748 (2021); *see, e.g., State v. C. J.*, 322 Or App 760, 764, 522 P3d 540 (2022) (explaining that appellant "locat[ing] and physically go[ing] to the journalist's home, armed with a maul and pepper spray *** in the context of appellant's increasing symptoms of depression and PTSD, and her reluctance to take prescribed" medications was "clear evidence that appellant was highly like to engage in future violence").

Thus, within that context, an "extreme risk" determination does not require the scientific certainty argued by appellant; rather, it requires a finding that, because of appellant's mental health disorder, the risk of future physical harm exists in a very high degree. As noted above, appellant does not dispute that the "evidence showed that appellant

presented a heightened risk of future violence because of his mental disorder." Appellant shot and killed two individuals because of his mental disorder, using the "quietest home-made" silencer the state's expert had observed. Additionally, appellant lacks insight into his illness which remains resistant to treatment. That evidence was sufficient to permit the determination that the risk of future harm exists in a very high degree.

In sum, the evidentiary record was legally sufficient to establish that, because of appellant's mental disorder, he continues to present an "extreme risk" that he "will inflict grave or potentially lethal physical injury to other persons" and "will continue to represent an extreme risk to the safety of other persons in the foreseeable future." ORS 426.701 (1)(a)(C)(i), (ii).

Affirmed.